Aside from the principle just considered, it may well be argued that what happened was within the reasonable scope of a conspiracy. That general subject is discussed at length in the case of Serrato v. State, 74 Tex. Cr. R. 413, 171 S. W. 1133, and Mitchell v. State, 36 Tex. Cr. R. 278, 33 S. W. 367, 36 S. W. 456. In the latter case, approval seems to have been given to the holding in Williams v. State, 81 Ala. 1, 1 So. 179, 60 Am. Rep. 133. We quote from that case:

"The question in this case then would seem to be, whether, if five or six men combine together to invade a man's household, and they go there armed with deadly weapons for the purpose of attacking and beating him, and in furtherance of this common design, all of the confederates being present, or near at hand, one of them gets into a difficulty with their common adversary and kills him, all may not be guilty of murder, although they did not all entertain a purpose to kill? The question, we think, must be answered in the affirmative, in the light of both principle and authority. Every man has the right to defend his house against every unlawful invasion, and to defend his person, when within it, against every and all violence without the necessity of re-

treat. The experience of mankind shows that very few men will fail to respond to instinct by exercising this right, to the extent even of killing an assailant if necessary. When a mob, conspiring together unlawfully, go to a man's house to do any serious violence to his person, especially in the night-time as here, they can expect nothing else than to meet with armed opposition, and the inference is not unreasonable that they intend nothing less than to oppose force to force, in the furtherance of their design. The natural and probable consequence of this is homicide—either of one or more of the assailants or of the party thus assailed, and such homicide, when committed by any one of the conspirators, can be nothing less than murder in all who combine to commit the unlawful act of violence, especially if they be near at hand, inciting, procuring, or encouraging the furtherance of the act of assault and battery."

In the present case the conclusion may well be drawn from the undisputed facts that the parties went to Lange's house with the purpose to take him out and whip him at all hazards, and to kill if necessary to prevent the thwarting of their plans. There is no evidence that the killing by one of the three was upon an independent design unknown to the others and not in contemplation of all of them.

The motion for rehearing is overruled.

### THE MACCABEES v. MARSHALL.
(No. 7269.)

Court of Civil Appeals of Texas. Austin.
Nov. 7, 1928.

Rehearing Denied Nov. 28, 1928.

John E. Owen, of Detroit, Mich., and Weatherby & Rogers and E. C. Street, all of Waco, for appellant.

W. A. Morrison, of Cameron, for appellee.

McCLENDON, C. J. Marshall sued The Maccabees, a fraternal insurance association, to recover premiums paid upon a life certificate canceled by the association because Marshall refused to pay increased monthly assessments made against him.

The controlling question in the case is whether Marshall was exempted from section 318-b of the 1922 amended by-laws of the association as "having transferred to some other plan." In an identical case this question was determined adversely to appellant in Cross v. The Maccabees (Tex. Civ. App.) 286 S. W. 545, in which the Supreme Court refused a writ of error.

■ Since this is an intermediate appellate court, we would not be justified in reopening this question, in view of the Supreme Court's refusal of the writ in the Cross Case, unless it clearly appeared that the present record presented a state of facts so different from that in the Cross Case as to necessitate a different holding. This we suggested to counsel in the argument, and requested that if such difference existed it be specifically pointed out. Appellant's counsel have sought to comply with this request in a printed supplemental memorandum brief. This, together with the briefs, arguments, motion for rehearing, and application for writ of error in the Cross Case, have had our careful perusal; and we are unable to find any difference in the two records that would call for a different construction of section 318-b. Substantially every argument and contention now urged was urged in the Cross Case.

■ We will advert to only one of the points urged as calling for a different holding, namely, that as a matter of fact there was no change of plan from "term insurance" to "whole life insurance" on or before January 1, 1905; the fact being that appellant's original certificate, as well as all other certificates issued prior to 1904, were on the whole life plan, and no term certificates were issued. Appellee's application for change of plan, made on a blank furnished by appellant, reads: "Application for a change from 'term plan' to 'whole life plan.'" The most that the evidence shows in this regard is that these expressions were inaccurately used. It does not even tend to show that there was no change of plan, but on the contrary demonstrates that there was change, namely from the theretofore existing whole life plan to the level premium plan. The fact that "term plan" was used to designate the then existing "whole life plan," and "whole life plan" was used to designate "level premium plan," is wholly immaterial in determining whether there was in fact a transfer from the old plan under which appellant was insured "to some other plan." We hold the Cross decision controlling on this issue.

■ We overrule appellant's contention that appellee is precluded from recovery because he never tendered the amount due prior to the 1922 amendment. The evidence conclusively shows that the association would not have accepted less than the increased amount provided in section 318-b, and it would have been a useless act for appellee to have tendered a less amount. He was not willing to pay on this basis, so he made no formal tender. Appellant's "Supreme Record Keeper" testified: "It is a fact that the sole and only reason that he became suspended was because he refused and failed to pay the increased rate demanded of him after October 1st, and thereabouts, in 1923. He refused to pay the rate fixed by the laws and was suspended automatically under the suspension by-laws. His suspension was because he refused to pay the increased rate fixed by the by-laws of 1922 and effective in October, 1923. The plaintiff was notified about options. He did not elect to take any of them, therefore, his rate was fixed at $31.00 per month, effective October 1923. He refused to pay it and was suspended."

Appellant's actuary testified: "The Association is not attempting to escape liability in this case on a claim or contention that it would have accepted the $4.80 per month, from the plaintiff if it had been tendered after the rates of 1922 had gone into effect in 1923."

■ Appellant's contention that interest on

premiums paid by appellee is not recoverable is overruled on the authority of the Cross Case.

The trial court's judgment is affirmed. Affirmed.