## THE MACCABEES v. MARSHALL.

### Nos. 1095—5334.

Commission of Appeals of Texas, Section B.

May 7, 1930.

John B. McIlwain, of Port Huron, Mich., and Weatherby & Rogers and E. C. Street, all of Waco, for plaintiff in error.

W. A. Morrison, of Cameron, for defendant in error.

SHORT, J.

This is a suit for damages, based on an alleged violation of a contract, brought by the defendant in error against the plaintiff in error, in which there was an instructed verdict in favor of the defendant in error. The case reached the Court of Civil Appeals at Austin from the district court of Milam county in the ordinary way, and the judgment of the district court was affirmed by the Court of Civil Appeals. 11 S.W.(2d) 523. From the judgment rendered by the Court of Civil Appeals, the plaintiff in error has duly prosecuted a writ of error to the Supreme Court.

Plaintiff in error, the Maccabees, is a fraternal insurance association, incorporated under the laws of the state of Michigan, and licensed to do business in the state of Texas. Defendant in error, Marshall, joined the Maccabees in 1892, and remained a member until October 31, 1923. For a number of years prior to October 31, 1923, Marshall paid dues in the sum of $4.80 per month, thirty days after which, because of his failure to do so, he was suspended on November 1, 1923, though the record shows he was still willing to pay, and would have paid all the dues he had been in the habit of paying, but that the plaintiff in error would not have accepted the amount he had been in the habit of paying, as full payment of his dues, claiming that under the by-laws then in force Marshall was due to pay $31 instead of $4.80. This suit was brought by Marshall to recover the money he had paid, with 6 per cent. interest, claiming the plaintiff in error had violated its contract.

The case involves the construction and application of section 318–b of the 1922 amended by-laws of the plaintiff in error. It is the theory of the defendant in error, by virtue of this section, that the plaintiff in error had breached its contract, through a wrongful demand for increased monthly assessments, in refusing to recognize his membership until he has paid a rerating of $31 in place of $4.80. The theory of the plaintiff in error is that it had a right to re-rate the defendant in error, on the basis it did, and therefore the failure of defendant in error to pay the amount demanded by the terms of the re-rating, automatically, after thirty days, suspended him, and that the demand for damages made in this suit is without merit. The Court of Civil Appeals affirmed the judgment of the trial court, upon the authority of the case of Cross v. The Maccabees (Tex. Civ. App.) 286 S. W. 545, wherein the Supreme Court refused a writ of error, and in which section 318–b of the 1922 amended by-laws of the plaintiff in error was construed, and applied to the facts in that case, which in all material respects are the same as the facts in this case.

The amended section 318–b is as follows: "All members admitted prior to October 1, 1904, who re-rated at entry age on or about January 1, 1905, and waived disability benefits, who have not transferred to some other plan, shall pay monthly rates at their attained age, nearest birthday, beginning October 1, 1923, according to the following table of rates." A table of rates is shown, the refusal to pay, according to which has produced the differences between the parties evidenced by this suit. It is the contention of the plaintiff in error that because of such refusal to pay the amount shown to be due by this table of rates, by the defendant in error, he has stood suspended by virtue of the regulations of the order. It is the contention of the defendant in error that he was not subject to the rates thus prescribed, since the section embodying such rates does not apply to him, for the reason (as he contends) he was admitted prior to October 1, 1904, and was re-rated at entry age on or about January 1, 1905, waiving his disability benefits, and had transferred to another plan of insurance with the order. It will be observed the amended section does not apply to the group of members admitted prior to October 1, 1904, who re-rated at entry age on or about January 1, 1905, and who had transferred to some other plan of insurance with the order, but it does apply to that group of members otherwise coming within its terms, "who have not transferred to some other plan." To entitle defendant in error to exemption from the amended section it must appear, not only that he was admitted prior to October 1, 1904, and that he re-rated at entry age on or about January 1, 1905, waiving disability benefits,

but further that he had transferred to some other plan of insurance with the order. So the question presented is whether, under the facts of this case, the defendant in error had "transferred to some other plan of insurance with the order," at the time the amended section above quoted was adopted in 1922. It appears that in 1922 the legislative branch of the order had provided, at different times after January 1, 1905, notably 1916 and 1919, respectively, various and sundry other plans, into which members carrying insurance with the order might, by doing certain things, be transferred, and thus avoid being liable under the amended section 318–b. It further appears that the plaintiff in error contends that the defendant in error could not have escaped being liable under this section, for the alleged reason that while he was re-rated at entry age on December 28, 1904, and had waived disability benefits, to which he had been entitled up to that time, by virtue of his alleged contract with the order, yet he could not have transferred to some other plan in as much as there was only one plan in operation at the time the defendant in error claimed he had transferred to some other plan.

The Court of Civil Appeals, in the case of Cross v. The Maccabees, supra, as well as the Court of Civil Appeals in this case, did not agree with this contention of the plaintiff in error, but each held that, under the facts of each case, the suspended member had transferred to some other plan, and therefore was not liable to pay the sums demanded, according to the table of rates, on or about October 1, 1923.

In the Cross Case the facts showed that Cross received his certificate of membership, based upon his previous application, on March 23, 1893; that on December 28, 1904, there was attached to his original certificate, which was returned to him, a rider as follows:

"Knights of the Maccabees of the World. Application for Change from Term Plan to Whole Life Term.

"To the Supreme Record Keeper, Port Huron, Mich.:

"Sir Knight: I am a member of ——— Tent No. 9 located at ——— State or Province of Texas, and in accordance with the rights granted in the following sections of the Laws of The Knights of the Maccabees of the World:

" 'Sec. *Monthly Rates for Whole Life Protection.*—The monthly rate to be paid by each life benefit member of the Association to provide protection for his whole life shall be as follows:

" 'Amount of Certificate

| Age | $250 | $500 | $1,000 | $2,000 | $3,000 |
|-----|------|------|--------|--------|--------|
| 18 | .25 | .45 | .85 | 1.70 | 2.55 |

(Then follows the schedule for ages from 19 to 50, and for age 35 the following is given)

| 35 | .40 | .75 | 1.45 | 2.90 | 4.35 & .25 |
|----|-----|-----|------|------|-----------|
| | | | | | $4.60 |

" 'Sec. 330. *Change to Whole Life Rate at Age of Entry.*—Any present life benefit member of the Association who was under fifty-one years of age at the time of his admission and who shall so elect, may receive whole life protection by paying the rate provided in Section 329 for his age at entry to the Association, if he shall file such election in writing with the Record Keeper of his Tent on or before the first day of January, 1905; provided, however, that such election by him and the adoption of the whole life rate at age of entry shall be a waiver of any claim for total and permanent disability benefits.'

"I hereby elect in writing to receive whole life protection by paying the rate provided in Sec. 329 for my age at entry to the Association, which was 35 years, and which, in accordance with the above table, will make my Monthly Rate $4.35, and I hereby expressly waive all claim to Total and Permanent Disability Benefits.

"I Hereby Surrender My Present Certificate, That a New One May Be Issued Under the Whole Life Plan.

"Dated this 28th day of Dec., 1904.

"[Signed] James B. Moore, Witness.
"[Signed] S. P. Cross."

There was also attached to the original certificate a second paper, as follows:

"Cameron, Texas, March 17.5–1905.
"S. P. Cross Esq., City

"Dear Sir: Enclosed find your Benefit Cert #399 K.O.T.M. You will notice on the attached slip that your rate has been changed from $1.95 to $4.35 from the first of January, making you $4.30 in arrears with me.

"Yours truly
"[Signed] James B. Moore, R. K."

It appears that, after the change was made from the original to the amended certificate, Cross paid $4.60 per month in all, whereas before that time he had paid $1.95 per month. It further appears that Cross, before the change, was entitled to receive certain sick benefits, under certain conditions, and, after the change was made, he was not entitled to receive these benefits.

In this case the defendant in error, Marshall, occupied the same relation to the plaintiff in error, as was occupied by Cross, as shown by the facts in his case, in that Marshall was first issued a certificate dated December 21, 1892, the rate of assessment being ninety cents, and the amount of the certificate being $1,000. Afterwards this amount was increased to $2,000 and the rate of assessment was correspondingly increased. On the 4th day of November, 1912, the original benefi-

ciary having died, a new certificate was issued in favor of new beneficiaries. On the 5th day of December, 1904, Marshall filed with the association an application for "change from term plan to whole life plan." This application was addressed to the Supreme Record Keeper and stated in substance that he was a member of Cameron Tent No. 9 and, "in accordance with the rights granted in the following sections of the laws of the Knights of the Maccabees of the World, naming sections 329 and 330, he elected in writing "to receive whole life protection by paying the rate provided in Section 329 for my age at entry to the Association, which was 45 and 49 years, and which, in accordance with the above table, will make my monthly rate $4.80, and I hereby expressly waive all claims to total and permanent disability benefits. I hereby surrender my present certificate that a new one may be issued, under the whole life plan." This was dated the 5th day of December, 1904, and was signed by G. E. Marshall. Section 329, designated "Monthly Rates for Whole Life Protection," is as follows: "The monthly rate to be paid by each life benefit member of the association to provide protection for his whole life shall be as follows:" (Then follows a table of rates, from which it appears that since Marshall was 47 years old at the time of his becoming a member his monthly rate was $4.80.)

The testimony shows without contradiction that Marshall paid this rate regularly up to within thirty days of the date he was suspended, because of his failure and refusal to pay a rate of $31 per month, on November 1, 1923, which new rate became effective October 1, 1923. The defendant in error also showed, by admissions from the Supreme Record Keeper of the Maccabees, the following: "In 1904 the Supreme Review adopted two plans for new business, one a term plan to age 55 and the other a whole life plan. Protection under the term plan expired at the age of 55 unless the member thereafter paid $3.00 per month per $1,000. The whole life plan did not expire at the age of 55, but continued on."

The record shows that the testimony in this case is substantially the same upon the question at issue as it was in the Cross Case. In other words, the facts that bear upon the issue as to the true construction of section 318–b are identical. The Supreme Court refused a writ of error in the Cross Case, the opinion of which is to the effect that Cross had transferred to some other plan of insurance, and that, under section 318–b, he was not within the class who were liable to pay the sums of money monthly, according to the table of rates appended to the amended section above quoted.

As we construe the various contentions of the plaintiff in error, its theory, upon which it based its right to successfully defend this suit, is that the defendant in error, after having become a member of the organization, under the plan in operation at the time he did become a member, had not transferred to some other plan, and therefore he was liable to pay the rates prescribed by the amended section 318–b. Upon the contrary, it is the theory of the defendant in error that his first membership in the organization was under the "term" plan, which, under the by-laws of the organization, was chargeable with the monthly rate of $2.30 and that afterwards he transferred to the "whole life" plan, which required him to pay an increased monthly assessment amounting to $4.80.

In support of the contention of the defendant in error the record shows that the plaintiff in error attached to the original policy a rider headed: "The Knights of the Maccabees of the World. Application for change from term plan to whole life plan." The defendant in error also introduced section 330 of the by-laws, which heading is as follows: "Change to Whole Life Rate at Age of Entry." The record further shows, without dispute, that the defendant in error began to pay $4.80 per assessment in December, 1904, and paid that rate until he was suspended for failure to pay the new rate effective October 1, 1923. The defendant in error also introduced a statement from the deposition of the Keeper of the Supreme Records of the Maccabees as follows: "In 1904 the Supreme Review (the Legislative Branch of the plaintiff in error) adopted two plans for new business, one a term plan to age 55, and the other a whole life plan. Protection under the term plan expired at age 55, unless the member thereafter paid $3.00 per month per $1,000.00. The whole life plan did not expire at age 55, but continued on." The defendant in error also introduced in evidence section 409 of the laws of 1904 as follows: "Section 409. The disability benefits to whom paid. Total and permanent disability benefits will be paid only to present members of the association who do not elect to transfer to the level rate for whole life protection provided in Section 329, thereby waiving all rights to such benefits." Speaking of the change made in his policy in December, 1904, the defendant in error testified: "I did not agree to change my policy any more." The defendant in error also introduced in evidence sections 410 and 411 in force at the time he changed his policy from the term plan to the whole life plan, said sections being as follows:

Section 410: *"Continued Payment of Monthly Rates During Disability.*—The monthly rates paid by all present members of the Association will provide death and total and permanent disability protection to the age of fifty-five years, at which time each such member must pay the monthly rate of three dollars for each one thousand dollars

538

of life benefits carried, which three dollar rate will continue such death and total and permanent disability protection; provided, however, that all such members, whether paying a term rate to fifty-five or the three dollar rate after such age, upon becoming totally and permanently disabled, must continue to pay the same monthly rates, fines, dues, and other charges which they would have been required to pay had such disability not occurred."

Section 411. *"Extent of Disability.*—A life benefit member of the Association, as provided in Section 409, who shall become totally and permanently disabled, by other than his own illegal, reckless, or foolhardy act, from performing or directing his usual labor or business, and from performing or directing any and all kinds of labor or business, whether such is his customary occupation or not, and who is in good standing in the Association at the time of such disability, may receive total and permanent disability benefits; provided, that such member shall continue to pay all monthly rates, additional assessments, dues, and fines which he would have been required to pay if such disability had not occurred."

The testimony introduced by the plaintiff in error does not contradict the testimony introduced by the defendant in error, but on the contrary is to the same effect. One witness introduced by the plaintiff in error says: "The rider was attached to the certificate to indicate that the plaintiff had elected, under the provisions of sections 329 and 330 of the amended laws of 1904, to pay the Whole Life Rate at Age of Entry. * * * This group of members were known as those who entered prior to October 1, 1904, and were re-rated about January 1, 1905, on the Whole Life Plan at their Entry Age. That group also claimed, under Sections 329 and 330 of the laws of 1904."

Section 336, also in evidence, is as follows: "Monthly Rates of Members who Attained 55 years of Age subsequent to January 1, 1905, who do not re-rate:

*"Monthly Rates of Members Who Attain Fifty-Five Years of Age Subsequent to January 1, 1905, Who Do Not Re-Rate:*—All present life benefit members of the Association who do not elect to re-rate at age of entry before January 1, 1905, as provided in Section 330, and who thereafter attain fifty-five years of age, shall from the first day of January or July immediately following the attainment of such age, pay three dollars per month for each one thousand dollars of life benefits carried."

Of course, the plaintiff in error contends that at the time the defendant in error changed from the term plan to the whole life plan and released the association from liability to pay sick benefits, and obligated himself to pay an additional amount as monthly assessments, that this did not constitute a transfer from one plan to another, claiming that the association at that time never had any other plan to which the plaintiff in error would have transferred until the adoption by the Supreme Review of the amended laws of 1922, but as the facts, without dispute, show that the plaintiff in error did have another plan, and that the defendant in error transferred to that plan, under section 318–b, the defendant in error was not liable for the increased rates prescribed by the table of rates appended to that section.

Believing that the facts have been established, without dispute, and that they support the judgments which have been rendered, we recommend that the judgments of the Court of Civil Appeals and of the trial court be affirmed.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both affirmed, as recommended by the Commission of Appeals.