## METRO–GOLDWYN–MAYER DISTRIBUTING CORPORATION v. COCKE.

### No. 3641.

Court of Civil Appeals of Texas. Amarillo. July 11, 1931.

Rehearing Denied Sept. 9, 1931.

E. E. Diggs, of Childress, and J. Robert Rubin, of New York City, for appellant.

R. H. Cocke and R. H. Templeton, both of Wellington, for appellee.

### RANDOLPH, J.

This suit was filed by appellant against appellee in the district court of Collingsworth county, Tex. to recover of appellee the sum of $1,507.50, together with interest and costs of suit, for breach of contract on the part of appellee in breaching five certain contracts entered into by the appellee with appellant, for the exhibition in the Rialto Theater, owned by appellee at Wellington, Tex., of certain copyrighted photoplays, or motion pictures and films to be furnished to said H. F. Cocke by the appellant, by which contracts the appellant was to furnish, as distributor, and appellee was to show and exhibit as exhibitor, certain films at a price named in the contract. It was alleged in appellant's petition that appellee agreed and contracted to receive, accept, and exhibit said photoplays in his Rialto Theater and thereby bound and obligated himself to pay for said photoplays, which he afterwards failed and refused to receive, accept, or pay for, and that by reason thereof damages in the amount of the contract prices for same, aggregating the total sum sued for, was sought.

Appellee filed his answer consisting of exceptions, general denial, and special pleas.

The case was submitted to the court without the intervention of a jury and the court rendered judgment that the appellant take nothing by this suit, and appeal therefrom was taken to this court.

The contract between the parties contains the following provisions which are quoted in full in the court's findings and are as follows:

### "Findings of Fact.

"I find that on April 23, 1926, plaintiff and defendant entered into contract marked 'Exhibit A' attached to plaintiff's first amended petition; that on November 20, 1926, in like manner plaintiff and defendant entered into a contract marked 'Exhibit B' attached to said petition; that in like manner on Nov. 17, 1927, plaintiff and defendant entered into contracts marked 'Exhibits C and D' attached to said petition; that in like manner on April 2, 1927, plaintiff and defendant entered into a contract marked 'Exhibit E' attached to said petition; that all of said contracts are what is known as 'Standard Exhibitor's Contract' filed with the Motion Picture Producers &

Distributers of America, Inc. I further find that said contracts contained the following or similar provisions, to-wit:

" 'That distributer hereby grants to exhibitor and the latter accepts a license under copyright, subject to the terms and conditions hereinafter stated, and those printed on the reverse side hereof; which are made a part of this contract, to exhibit during the year commencing ——— 192—, at the above theater.'

"I further find that no date for exhibition of each photoplay named in each contract was set out in the front part of said contract and that each contract contains the following or similar provisions, to-wit:

" 'G. The distributer shall give the exhibitor at least four (4) weeks notice in writing of the date upon which each photoplay, the exhibition dates of which are not specified in column seven of the schedule in this contract, will be available to the exhibitor and shall at the same time notify the exhibitor that the latter may select exhibition dates within the fortnight commencing with such date of availability. Within two (2) weeks after the mailing of such notice, the exhibitor shall notify the distributer in writing of the exhibition date or dates (within such fortnight) selected by the exhibitor. In the event of the failure of the exhibitor so to do, the distributer may at any time, after the expiration of said period (2) two weeks, from the date of the initial notice of availability sent by the distributer, designate the exhibition date or dates of such photoplay by mailing notice in writing thereof to the exhibitor at least three weeks before the first exhibition day so designated; and the period of protection (if any) afforded the exhibitor under this contract shall commence to run with the expiration of the fortnight described in the initial notice of availability.

" 'In the event that exhibition date or dates selected by the exhibitor as above provided, are not open to exhibitor, the notice of availability theretofore sent the exhibitor by the distributer shall be null and void and the distributer shall be obligated to mail a new notice of availability to the exhibitor. Any exhibition date selected by the exhibitor (if open) or designated by the distributer as above provided or otherwise agreed upon (in writing) between the distributer and the exhibitor, shall be for all purposes the exhibition dates of such photoplays as though originally specified in this contract.'

"I further find that the plaintiff did not give defendant notice in writing or otherwise of the day of release of photoplays as above provided, or that plaintiff tendered or offered said photoplays to defendant as provided in said contract, and that defendant paid for all photoplays that he received, exhibited under said contract.

"Conclusions of Law.

"I conclude from the above findings of fact that the plaintiff has failed to establish its cause of action against the defendant and that no liability is shown and that the judgment should be that plaintiff take nothing by its cause of action against the defendant."

The court's findings of fact and conclusions of law are attacked by the appellant upon the following grounds:

1. The evidence having shown without controversy that defendant contracted with plaintiff for the exhibition of and payment for the copyrighted photoplays, but failed and refused to accept, or pay for, or exhibit said photoplays and sold out his theater to other persons so that he could not accept, receive, or exhibit said photoplays and said persons to whom he sold his theater business also refused to accept or pay for said photoplays; and the evidence having shown further without controversy that defendant refused to accept, exhibit, or pay for said photoplays the amount stated in the contracts, and the contracts further providing that they should not be assigned by either party without the written acceptance and consent of the other party, and providing further that even if such assignment should be made, that it should not relieve the exhibitor of his liability under the contract; and the court erred in rendering judgment for the defendant and in basing his judgment upon conclusions that plaintiff was not entitled to recover because it did not offer or tender to defendant the photoplays or picture films or notify him when they would be available for exhibition.

2. The court erred in not rendering judgment for the amount sued for because the testimony of defendant himself showed that after he went back into business for the exhibition of photoplays and repossessed the theater that he had sold, the plaintiff, for the purpose of settlement of the matters in controversy in this suit, offered to make a new contract with the defendant for the exhibition of these pictures or a part of them, and that he then refused to make said contract or receive and accept said pictures at all or pay for same.

3. That the court erred in his findings of fact that the plaintiff distributor agreed that it would notify defendant in writing of the date of exhibition of photoplays which he (defendant exhibitor) was to exhibit and basing his judgment thereon, because, by the terms of such contracts, one a week was to be played beginning on the date of each of said contracts, so that the notice provided for in the contract to be given to the exhibitor, as printed therein, was thus eliminated and defendant was bound to receive one each week, which he failed and refused to do, having sold out his business and the parties to whom he had sold it had refused to carry out or be bound by the

defendant's contract for the exhibition of such pictures.

The contract numbered 3612, dated April 23, 1926, contains the following provision: "J. This contract shall not be assigned by either party without written acceptance of the assignee and the written consent of the other party; provided, that if the exhibitor sells or disposes of his interest in the theater above specified, he may assign this contract to the purchaser of such interest with the written consent of the distributer and such assignment shall become effective upon the written acceptance thereof by assignee, such assignment, however, shall not relieve exhibitor of his liability hereunder. This privilege of assignment without the consent of the distributer shall not apply to this contract, if not to be performed within one year."

■■ The appellant contends that the law does not require any party to do a vain or useless thing and that a formal tender is never required when it appears that if it had been made, it would not have been received. To support this contention, the appellant cites 8 Permanent Supp. to R. C. L. p. 5789; Vitagraph, Inc., v. Park Theatre Co., 249 Mass. 25, 144 N. E. 85; The Maccabees v. Marshall (Tex. Civ. App.) 11 S.W.(2d) 523; Norton v. White (Tex. Civ. App.) 16 S.W.(2d) 553; Richmond v. Hog Creek Oil Co. (Tex. Civ. App.) 229 S. W. 563, 571; White v. Dennis (Tex. Civ. App.) 220 S. W. 161; Schaeffer v. Coldren, 237 Pa. 77, 85 A. 98, Ann. Cas. 1914B, 175; C., C. C. & St. L. Ry. Co. v. Anderson Tool Co., 180 Ind. 453, 103 N. E. 102, 49 L. R. A. (N. S.) 749, Ann. Cas. 1916B, 1217.

We recognize the rule to be as stated. It appears from the record that the appellee had sold his moving picture theater to Simpson & Nelson at the time he should have received the notice and tender pleaded. It is true that this sale was made without the consent of the appellant having been obtained, and it is also true that Simpson & Nelson did not assume the obligations of appellee to appellant, but, nevertheless, the appellee had not only transferred the theater to Simpson & Nelson but also had assigned the contract in controversy to them. This being true, the law would not require the doing of a vain and useless thing, such as provided in the contract, in giving such notice and making the tender provided for when the appellee had by such sale placed it without his power to perform his contract.

■ The appellant contends that the court erred in excluding the following letter, which was offered by the appellant:

"Mr. Chas. R. Zears, Secretary,
"Oklahoma City Film Board of Trade,
"623 Security Building,
"Oklahoma City, Okla.

"Dear Mr. Zears:
"Receipt is acknowledged of your letter of March 21st, inclosing copy of complaint by

Metro-Goldwyn-Mayer, and beg to advise as follows:

"1. As you know, I sold my theater business in Willington to Simpson & Nelson, February 8th, 1928. I used my best efforts to get them to use these pictures and assume all my contracts, but they are closing this theater for some time, and could not use them there at, and also advised that they felt these pictures were bought too high.

"2. I feel Mr. Zoeliner, under the circumstances in this case, is some what out of line. I have run these theaters here for five years, have never had a complaint before the board of trade.

"3. Last summer when I closed one of the theaters, of all the pictures I had bought from various exchanges, Metro-Goldwyn-Mayer was the only company that asked for payment of pictures that were set out then to be played in the fall. I paid them, and up to the time I sold had not played all that I had paid for.

"I ask that you use your good offices to have this matter stopped before it proceeds further, and advise me immediately whatever is done about the matter, since under no circumstances do I consider the complaint well founded, and shall resist the same throughout.

"Yours very truly,        H. F. Cocke."

This letter was offered by the appellant, as stated in the bill of exceptions, for the following purposes: " * * * Said letter shows that defendant H. F. Cocke, had made a contract with plaintiffs for the exhibition of the photoplays and pictures, breach of which contract is sued for in this cause and by this letter, defendant admits that he had made this contract and did not want to perform it because he had sold out the business and could not get the parties to whom he had sold, Simpson & Nelson, to use the pictures; and shows by said letter that his only reason for not paying for these pictures according to the contract was because he did not want to because he had gone out of business; and he further states in said letter that he will resist the claim throughout; all of which was an ad-

mission by the defendant, H. F. Cocke, in his letter of his liabilities to plaintiff upon the contract sued upon and showed conclusively his liability to plaintiffs, and that he had no defense to said claim except that he did not want to pay it; and defendant also testified in this cause that he did not write this letter to Mr. Zears and that he stated therein that the 'other people would not take the pictures. I could not use the pictures. I did not use the pictures and never offered to pay for them. I was out of business and did not want them.' "

We are not informed by the bill upon what ground the court excluded the letter. The appellee insists in his brief that the letter was written in the attempt to effect a compromise before an arbitration board and was therefore not admissible. The bill discloses that the appellee admitted he wrote the letter. It is likely that the trial court excluded this letter upon the theory announced by him that the case had been disposed of by the failure of appellant to give the notice and make the tender provided in the contract. On another trial this letter should be admitted in evidence.

It is not clear from the record what brought forth this letter from appellee, but appellee expressly pleaded as follows: "This defendant further specially pleads that he never at any time entered into any arbitration of the matters involved and never at any time entered into any voluntary agreement, agreeing to any matters of arbitration upon matters growing out of the execution of such contract." This precludes his objection to the letter upon the ground that it was written in an attempt to arbitrate.

It will be understood that the record shows that Simpson & Nelson had never assumed the obligations of the appellee to appellant.

The other propositions and assignments of appellant, having been considered, are overruled.

For the reasons stated, the judgment of the trial court is reversed, and the case is remanded for a new trial.