## DE GRAZIER v. CRADDOCK.

### No. 11411.

Court of Civil Appeals of Texas. Dallas.

July 8, 1933.

Rehearing Denied Sept. 30, 1933.

See, also (Tex. Civ. App.) 56 S.W.(2d) 673.

John T. Gano, of Houston, for plaintiff in error.

Saner, Saner & Jack, of Dallas, for defendant in error.

JONES, Chief Justice.

In a suit in a district court of Dallas county, defendant in error, W. A. Craddock, recovered judgment against plaintiff in error, Joe De Grazier, for a one-half interest in an oil and gas lease to five acres of land in Gregg county. The appeal is duly perfected to this court.

The necessary facts are:

On or about February 26, 1931, the parties to this appeal entered into a written contract with one J. O. Ehlinger, the owner of an oil, gas, and mineral lease on five acres of land located in Gregg county, by virtue of which contract Ehlinger agreed to assign to them, for the consideration of the payment of $1,250, $500 of which was to be paid in cash, his mineral lease on the said tract of land; the remainder of $750 to be paid upon the delivery of the assignment to the lessees. Under an escrow agreement, the assignment of this lease by Ehlinger, together with the $500 cash payment, was placed in the Rembert National Bank at Longview, Tex., to be held by such bank under the stipulation that, if the lessees should advise the bank by 12 o'clock noon, March 3, 1931, that they had pronounced the title to said lease good, then said assignment and money was to be held ten additional days, and if within such time the lessees should pay to the bank, for the lessor, the additional sum of $750, the bank should deliver the $1,250 to Ehlinger and the assignment of the lease to the lessees. It was also provided that, if Ehlinger's title to the lease be rejected on or before noon of March

3, 1931, the assignment contract was to be returned to Ehlinger and the $500 returned to the lessees; but if the title be accepted and the remaining $750 not paid within the ten additional days, then the $500 should be forfeited to Ehlinger and the lease returned to him. This contract was duly filed for record in Gregg county on February 27, 1931.

Under agreement between the lessees, defendant in error was to devote his special efforts to the organization of a corporation to take over this lease and, by the means of the sale of stock, to secure sufficient money to finance the purchase of the lease and secure its development for the production of gas and oil. Plaintiff in error was to devote his special efforts to the meeting of the payment of the remaining $750 within the contract time. The title to the lease was satisfactory to lessees, and defendant in error rented an office to be used by lessees, at a cost to him of $85, had some printing done at a cost of $11.75, and was devoting his efforts to organizing a corporation, and did secure the draft by an attorney of a suitable charter for the contemplated corporation. A few days prior to the expiration of the time limit, plaintiff in error went to Waxahachie for the purpose of securing the remaining sum of $750, necessary to secure title to the lease, and defendant in error went to Fort Worth in the interest of the contemplated corporation. When defendant in error returned from Fort Worth, prior to the expiration of the time within which the remaining $750 must be paid, he undertook to get in communication with plaintiff in error, but was unsuccessful until after the time limit had expired for such payment, and was informed by plaintiff in error that the money had not been paid and that they had forfeited their rights to the lease. Defendant in error believed this statement, ceased his efforts towards organizing the corporation, and considered the business venture at an end.

On or about July 2, 1931, plaintiff in error told defendant in error that he believed he could get a return of the $500 forfeited to Ehlinger, and presented to defendant in error for his execution a release of his interest in the lease with the statement that its execution was necessary in order for plaintiff in error to secure the return of the $500. Defendant in error believed this representation, relied upon it, and executed the release of his interest, believing that, in reality, neither of the parties had any interest in the lease. It afterwards developed, however, that plaintiff in error had paid to Ehlinger the $750 necessary to complete the lease contract, and had requested Ehlinger to make the lease solely to him, which Ehlinger refused to do, but received the payment, delivered the assignment contract to plaintiff in error, who, without the knowledge of, or authority from, either Ehlinger or defendant in error, erased from the assignment contract the name of defendant in error, and thereby changed the instrument from its original form of an assignment of the lease jointly to plaintiff in error and defendant in error, to an assignment of a lease solely to plaintiff in error, and, after this change, duly filed the same for record in Gregg county.

Ehlinger discovered such alteration of the assignment of the lease executed by him, and brought this suit in the district court of Dallas county, to cancel the lease because of the alleged material alteration, making plaintiff in error a party defendant to the suit. On July 15, 1931, Ehlinger amended his original petition, making other persons, parties, but alleging, substantially, the same material facts as in the original petition. Soon thereafter, defendant in error discovered, through means of this suit, and for the first time knew, that the assignment, executed to him and plaintiff in error in February, 1931, had not been forfeited for failure to pay the $750, but that said $750 had been actually paid by plaintiff in error, and that defendant in error's name had been erased from the assignment contract. Defendant in error then intervened in the suit, after having obtained leave of the court therefor, and alleged the facts as above described, and claimed, in effect, that he had been defrauded by plaintiff in error of his interest in the lease without his knowledge or consent, and asked that the release he had executed to plaintiff in error, July 2, 1931, be canceled, and that he be decreed a joint owner in the oil and mineral lease contract under the Ehlinger assignment. While this plea in intervention alleged all the facts necessary for a recovery because of the fraud alleged to have been practiced on him, the original plea in intervention was indorsed as a suit in trespass to try title; such indorsement also followed the two succeeding amended pleas of intervention, but the third amended plea of intervention filed by defendant in error, and on which the case went to trial, was not so indorsed.

Just before the suit went to trial, Ehlinger dismissed his cause of action, and there remained for trial only the issues between the intervener, defendant in error, and the original defendant, plaintiff in error. The case was tried to a jury and, in the main, all the material evidence introduced by defendant in error and necessary for his recovery was in sharp conflict with the evidence of plaintiff in error. These disputed issues were submitted to the jury and all of them decided in favor of defendant in error. The findings of the jury, paraphrased, are as follows:

(1) That the defendant, De Grazier, represented to the intervener, Craddock, at or prior to the time Craddock signed the pur-

ported release of his interest in the Ehlinger contract on or about July 2, 1931, that said Ehlinger's contract had been canceled and the assignment of the five-acre lease returned to Ehlinger.

(2) Intervener, Craddock, was induced by said representations referred to above·to sign the purported release of his interest in the contract with J. O. Ehlinger.

(3) Defendant, De Grazier, at or prior to the time Craddock signed the instrument, on or about July 2, 1931, represented to the intervener, Craddock, that he (De Grazier) could secure a return of the $500 earnest money deposited with the bank in connection with the Ehlinger assignment, and that it was necessary for Craddock to sign such instrument in order for De Grazier to secure for himself and Craddock the return of said earnest money.

(4) Intervener, Craddock, was induced by said representation, referred to above, to sign the purported release of his interest in the contract with J. O. Ehlinger.

(5) Defendant, De Grazier, at or prior to the time the intervener, Craddock, on or about July 2, 1931, signed the instrument referring to the Ehlinger contract, concealed from said Craddock the fact that the assignment of the five-acre lease executed by Ehlinger to W. A. Craddock and Joe De Grazier had been delivered to said De Grazier and that he (De Grazier) had thereafter erased Craddock's name from said assignment.

(6) Such concealment by the defendant, De Grazier, induced intervener, Craddock, to sign said instrument of July 2, 1931.

(7) Defendant, De Grazier, induced intervener, Craddock, to execute the instrument on or about July 2, 1931, referring to said Craddock's interest in the contract with Ehlinger, by means of false representations and fraudulent promises as alleged by intervener, Craddock, in his amended plea of intervention and cross-action.

(8) The erasure of the name of W. A. Craddock from the original assignment was not done with the knowledge and consent of W. A. Craddock.

(9) The erasure of the name of W. A. Craddock from the original assignment was not done with the knowledge and consent of J. O. Ehlinger.

(10) The erasure of the name of W. A. Craddock from the original assignment was not done by the defendant De Grazier in good faith.

(11) The erasure of the name of W. A. Craddock from the original assignment was not done for the purpose of having such assignment conform to the true state of facts and as representing the actual interest of the parties therein.

(12) The intervener, Craddock, paid part of the consideration for the assignment of the lease from J. O. Ehlinger.

(13) Intervener, Craddock,˙was not indebted to the defendant, Joe De Grazier, in any sum of money at the time of the execution by the said W. A. Craddock of the assignment and transfer of interest to Joe De Grazier, executed approximately on the 2d day of July, 1931.

The above findings of the jury, except as to finding No. 13, are clearly supported by evidence and are adopted as the findings of this court. Special issue No. 13 is not supported by evidence, but is contrary thereto, and is not adopted as the findings of this court.

On issue No. 13, the evidence discloses that the payment of $500 was paid by plaintiff in error by agreement between the lessees. The evidence also shows that plaintiff in error paid the remaining $750 for the purpose of making the lease his sole property. The evidence further discloses that the assignees of this lease intended to organize a corporation and sell stock for the purpose of financing the deal and for the development of the property. That under agreement of the parties, defendant in error advanced for office rent $85 and printing $11.75, done in furtherance of this effort to incorporate the business of developing the five acres of land in question. It is also in evidence that defendant in error consulted his attorney about the drafting of a charter, and that such draft was actually made; but the evidence fails to disclose that defendant in error paid anything for the services of this attorney. There is also evidence to the effect that plaintiff in error was indebted to defendant in error on previous loans and advances in the sum of $60; it does not appear, however, that this indebtedness was in connection with the partnership business. The evidence further discloses that defendant in error permitted the wife of plaintiff in error to purchase certain goods and merchandise on defendant in error's credit, but the amount is not disclosed. Whatever this latter indebtedness was, it had no connection with the business undertaken by the partnership.

While the evidence of plaintiff in error disputes the two items of $85 for office rent and $11.75 for printing, in deference to the jury's findings on special issue No. 12, we find that such two items of expenditure made by defendant in error was authorized by plaintiff in error, and was expended in an attempt to further the business of the partnership. The other items above named are not shown to have been expended by defendant in error in furtherance of the business of acquiring or operating the lease. It therefore appears that, in the matter of acquiring, and in preparation for operating, the lease, plain-

tiff in error expended the sum of $1,250, and defendant in error expended the sum of $96.-75, making a total expenditure of $1,346.75, of which sum each party is charged with the payment of one-half, or $673.38. It therefore follows that, at the time of the trial of this case, defendant in error was indebted to plaintiff in error in the sum of $576.62.

■ This is not a suit in trespass to try title. Both parties claim under the same instrument, viz., the assignment of the lease to them jointly by Ehlinger. When plaintiff in error paid to Ehlinger the $750, the title to the lease vested in the two parties as joint owners. No wrongful act of plaintiff in error, in erasing from the assignment the name of defendant in error, as one of the lessees, could in any way change the title to the lease, and plaintiff in error's subsequently securing a release of defendant in error's interest under fraudulent representations, that were believed and acted upon by defendant in error, could not have this effect. 14 Tex. Jur. 899, 7 Tex. Jur. 885, 886, and authorities cited in the two references; De Perez v. Everett, 73 Tex. 431, 11 S. W. 388; Harris v. Kiber (Tex. Civ. App.) 178 S. W. 673. All assignments of error, based upon the theory that this is a suit in trespass to try title, are overruled.

■ The fact that defendant in error only made a tender of the money to plaintiff in error in his pleadings, and did not actually tender the money due by him, does not operate to deny defendant in error the right to the cancellation of the release he executed under fraudulent representations, nor to have the written assignment of the lease restored to its true form. Plaintiff in error had repudiated the contract and thereby rendered the tender useless. 62 C. J. pp. 658, 659; 26 R. C. L. pp. 626, 627; Metro-Goldwyn-Mayer Distributing Corp. v. Cocke (Tex. Civ. App.) 41 S.W.(2d) 645, 647; Texas Auto Co. v. Clark (Tex. Civ. App.) 12 S.W.(2d) 655.

■■ Under the findings of the jury, adopted by this court, this case resolves itself into one in which the facts are that the parties mutually agreed to purchase from Ehlinger an assignment of the oil, gas, and mineral lease to the five acres of land in question, for the total consideration of $1,250. An assignment of such lease was duly executed by Ehlinger to the parties to this appeal, on the payment of $500 in cash, and to be finally consummated by the payment, on or about March 14, 1931, of the remaining $750; that plaintiff in error personally paid to Ehlinger the $750, and took into possession the lease assignment; that he subsequently falsely and fraudulently represented to defendant in error that the money had not been paid, and that the assignment contract had become forfeited, and that by false and fraudulent representations he then secured a release of defendant in error's interest in the said assignment, and that prior to securing said release he had, without authority from defendant in error, erased his name from the assignment contract, thereby rendering it apparently a contract for his sole benefit.

It is true that plaintiff in error unequivocally denied that he was guilty of any such fraudulent acts, but the testimony of the parties with reference to this issue was for the jury to decide, and their verdict is a repudiation of plaintiff in error's testimony, in that respect, and is binding on this court. Because of these acts of fraud, defendant in error was never divested of his one-half interest in the lease, and no other judgment could have been entered, as to defendant in error's one-half interest in the lease, than that rendered by the trial court.

■ The judgment, however, must be reformed in respect to the indebtedness of defendant in error to plaintiff in error, and judgment be here rendered in plaintiff in error's favor for the sum of $576.62, together with 6 per cent. interest per annum thereon from the date of the judgment in the trial court. The judgment of the trial court is reformed in the respect above named, and as reformed is affirmed.

Reformed and affirmed.