WELSH v. MICHIGAN MAPLE CO.[1]

1. SALES—BREACH—SEVERABLE CONTRACT—PAYMENT.
   Failure to pay for shipments of lumber at the times fixed by a contract of sale, under which it was to be shipped at the rate of 100,000 feet a week, and to be paid for in fifteen days from the date of each invoice, constitutes only a breach of a severable condition, and does not justify a rescission, in the absence of an intention on the part of the buyer to abandon his contract, or facts authorizing the seller to believe that he so intended.

2. EVIDENCE—APPEAL AND ERROR.
   A ruling excluding evidence of the buyer's insolvency is not reversible error where the fact was admitted by the testimony of the buyer.

Error to Osceola; Sessions, J., presiding. Submitted January 21, 1910. (Docket No. 109.) Decided April 1, 1910.

Assumpsit by Thomas R. Welsh against the Michigan Maple Company for breach of a contract for the sale of lumber. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

Harris & Ruegsegger, for appellant.

Howard F. Withey, for appellee.

HOOKER, J. The parties entered upon the performance of a written contract which required the defendant to ship to the plaintiff 3,000,000 feet of a given grade of lumber at the rate of 100,000 feet per week, a bill of lading to pass from the First National Bank of Reed City, where payment was to be made on or before 15 days from the date of invoice, less 2 per cent. discount. From November 8, 1906, to July 24, 1907, the defendant shipped

[1] Rehearing denied July 15, 1910.

all but 660,000 feet of said lumber, and, according to defendant's claim, all but 582,168 feet.

Upon the claim that the plaintiff had broken the contract, by reason of his persistent failure to make payments seasonably throughout the period, and existing arrearages, the defendant refused further performance, and plaintiff brought this action to recover damages for defendant's failure to perform the contract, and recovered a verdict and judgment for $2,457.93, from which defendant has appealed.

Plaintiff's brief appears to admit that he did not make payment according to the terms of the contract and concedes that:

"Defendant had the right to insist on a strict performance of the contract, and that if plaintiff failed to fulfill his obligations, after being notified to that effect by defendant, the latter would have been justified in refusing to make further shipments under the contract, provided it itself had performed its obligations with the same strictness that it demanded of plaintiff."

It claims, however, that the parties modified the contract (*a*) by express agreement; (*b*) by a tacit waiver of strict performance. The contract requires payment within 15 days after the date of invoice. Inasmuch as the logs were shipped, with draft attached to bill of lading, the plaintiff could not obtain the lumber without paying the draft, and he was obliged to forego the credit or permit the lumber to remain on the car subject to demurrage.

It is claimed that, in view of this situation, the defendant consented to allow the bank to permit plaintiff to receive the lumber, the bank promising to become responsible for his payment of the draft, and that such practice was followed and acquiesced in. This arrangement is not very satisfactorily proved, and there is little reason for saying that plaintiff was a party to it, while defendant denies it *in toto*, and its acts have been inconsistent with it. We are of the opinion, however, that it has

161 MICH.—2.

little to do with the crucial question in the case. Whether the agreement was made or not, the bank would be liable if the lumber was delivered without payment, and in either case it would not make plaintiff's failure to pay within 15 days any the less a breach of the contract. It is not claimed, as we understand it, that the alleged agreement with the bank contained any release of the plaintiff from his obligation to pay in 15 days, or that the time was extended. At the very most, it can only be claimed to have been a waiver by the defendant of the requirement of payment before delivery. The same may be said regarding the tacit waiver. Such waiver would go no further, unless it be said that, because the defendant did not in every instance exact payment before making another shipment, it bound itself to follow the practice, and ship all the lumber contracted whether the plaintiff should continue in arrears or not. The proof shows that for a time the shipments conformed to the contract. After that they did not at times, but in such instances the plaintiff was in arrears as to payment for logs already received. The correspondence shows that defendant was at all times insisting on payment, every shipment was accompanied by express instructions to the bank not to deliver until payment was made, while the bank as regularly disobeyed these instructions, of which we fail to find any evidence that defendant was informed.

We are unable, however, to distinguish this case from *West* v. *Bechtel*, 125 Mich. 144 (84 N. W. 69, 51 L. R. A. 791), in principle. The contracts differ only in the provision of the latter for the security afforded by the delivery through the bank, thereby making payment a condition precedent to the delivery of any installment. There is nothing in this or any other provision of the contract which justifies the contention that the contract is not separable, or that the general rule applicable to such contracts should not apply. Under this contract, payment, not shipment, is the dependent promise, and, while delivery in its terms may be dependent on payment, that fact

does not relieve defendant from the duty of performance by shipment. The undisputed facts made it proper for the learned trial judge to instruct the jury that there was nothing in the case to indicate that the plaintiff intended to abandon his contract, or to authorize defendant to act upon such belief.

Counsel for defendant ask that the cause be reversed for the reason that the trial judge excluded certain testimony tending to show the plaintiff's insolvency. The testimony of Mr. Welsh showed that he was the Welsh Manufacturing Company, and that in July, 1907, shortly before defendant's refusal to perform the contract, that concern was insolvent. Necessarily, if that was true, he was insolvent, for he was the company, which we understand was not a corporation. It was an admitted fact, therefore, that Welsh was insolvent in July, 1907. The several assignments relied on to cover this point do not give the pages of the record where the testimony was offered and excluded, and we are unable to find that they refer to anything on the subject of insolvency, not placed beyond dispute by Welsh's testimony. Our attention is not called to any assignment of error upon the charge or refusal to charge upon this subject.

The judgment is affirmed.

MONTGOMERY, C. J., and OSTRANDER, MOORE, and STONE, JJ., concurred.