SPRING COAL COMPANY *vs.* QUEMAHONING COAL COMPANY.

Third Judicial District, Bridgeport, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The plaintiff and the defendant entered into a contract whereby the defendant agreed to deliver to the plaintiff a minimum of 30,000 gross tons of coal in approximately equal monthly proportions from April 1st, 1916, to April 1st, 1917. The contract provided that if the credit of the buyer should at any time in the judgment of the seller become impaired, the seller should have the right to require payments in advance before making further deliveries; also that it was subject to cancellation in case of failure of any of its terms or conditions. Payments were to be made on the 20th of the month following that in which shipments were made. In a suit for damages for breach of contract, the trial court allowed the plaintiff damages for the defendant's failure to deliver coal as contracted for during certain months, but refused to allow damages for failure to deliver in March, 1917, on the grounds that the contract had been abrogated by the parties prior to March 1st, and that the plaintiff's failure to pay for the February shipment gave the defendant the right to refuse to ship the coal for March until this payment was made. *Held:—*

1. That the finding did not support the defendant's claim that it had exercised its option to require payments in advance of delivery.
2. That under the contract, delivery of the coal and payment therefor were not concurrent conditions; but that under its provisions and because of the defendant's default in delivery, the plaintiff was justified in withholding payments as it did.
3. That the evidence did not support the court's conclusion that the contract was abrogated by mutual consent, and hence the plaintiff was entitled to damages for failure to deliver in March.

A finding should state facts, not evidence.

Argued November 1st—decided December 23d, 1921.

ACTION to recover damages for breach of contract, brought to and tried by the Superior Court in New Haven County, *Kellogg, J.;* facts found and judgment rendered for plaintiff for $6,615.72, from which it appealed. *Error and cause remanded.*

The following are the only provisions of the contract necessary to an understanding of the appeal: "If credit of the buyer shall at any time in the judgment of the seller become impaired, the seller shall have the right to require payments in advance before making further deliveries. . . . The tonnage covered by this contract is for shipment in approximately equal monthly proportions. This contract is subject to cancellation in case of failure of any of its terms or conditions. Quantity. Shall not be less than 30,000 gross tons, or more than 35,000 gross tons. Period. From April 1, 1916, to April 1, 1917. . . . Payments. To be made on the 20th of the month following that in which shipments are made."

*Leonard M. Daggett* and *J. Dwight Dana,* for the appellant (plaintiff).

*Philip Pond,* for the appellee (defendant).

WHEELER, C. J. The contract whose breach is the subject of the appeal, covered the delivery by defendant between April 1st, 1916, and April 1st, 1917, of a minimum of 30,000 gross tons, in approximately equal monthly proportions, of "C Prime" coal from the Ralphton mines, to the plaintiff at either Port Reading, N. J., St. George, S. I., or Port Richmond, Pa., at a price of $1.65 per ton f. o. b. mine, or $2.90 per ton f. o. b. at these points of destination. The defendant delivered under the contract 17,583 tons, and the plaintiff sues to recover its damages for the failure to deliver the balance contracted for.

The court. found that the defendant had failed to deliver coal as contracted for during the months of September, October, November, January and February, and ascertained the difference between the contract

price and the market price under our rule of damages (Sales Act, General Statutes, § 4733), and rendered judgment for $6,615.72.

The trial court refused to include in its judgment damages for the failure to make delivery for the month of March, 1917. Under the contract the defendant was obligated to deliver approximately 2,500 gross tons in March, 1917. The trial court places its refusal to award damages for this breach, upon two grounds: (1) That the contract was abrogated by the parties prior to March 1st. (2) That the plaintiff's failure to pay for the February shipment gave the defendant the right to refuse to ship coal for March until this payment was made. The first ground is determined by the facts found, unless the motion to correct paragraphs 18, 19 and 20 of the finding should have been granted. The second ground is determined by the construction given to the contract. We will dispose of this ground first.

The plaintiff was obligated to pay for the February shipment on the 20th of the following month of March. When the plaintiff failed to make such payment the defendant had two courses open to it. It might, at its option, have canceled the contract, or, if it was of the opinion that the credit of the plaintiff had become impaired, it had the right to require payments to be made in advance before making further deliveries. This latter provision did not give defendant the right to require all payments past due to be made before it should make further deliveries. It merely gave the defendant the right to refuse to make future deliveries when it should determine, and this meant fairly determine, that plaintiff's credit had become impaired, until plaintiff should make payment for the same before delivery. Defendant understood this feature of the contract, for it pleaded in its answer that it had availed

itself of the right given by the contract and had required payments in advance before making further deliveries, since in its judgment the credit of the plaintiff had become impaired.

The finding does not support in any degree the claim that deliveries in March were not made because defendant had determined that the credit of the plaintiff had become impaired, and had required advance payments before making further deliveries.

In the absence of special provisions of the contract giving defendant the right to refuse future deliveries until past due payments had been made, it had no such right under the law.

The Sales Act is the same in all States whose law might be held to govern this contract. Whether defendant had the right to refuse to proceed further and sue for breach of the entire contract, or, if the breach is severable, for compensation for that but not to treat the whole contract as broken, is made to depend by the terms of the Sales Act (General Statutes, § 4711) "on the terms of the contract and the circumstances of the case." Payment for deliveries under the contract were not to be made at the time of delivery, but on the 20th of the succeeding month. The coal was sold on credit, and payment was not made a condition precedent to delivery. In fulfillment of its contract the defendant had no right to wait until the previous months' deliveries were paid for, before making further delivery. Delivery of the coal and payment were not by the contract made concurrent conditions. This section of the Sales Act conformed to the rule of the existing common law. *Mersey Steel & Iron Co.* v. *Naylor, Benzon & Co.*, L. R. 9 App. Cas. 434; *Welsh* v. *Michigan Maple Co.*, 161 Mich. 16, 125 N. W. 692; *Campbell & Cameron Co.* v. *Weisse*, 121 Wis. 491, 99 N. W. 340. Under the

terms of the contract, defendant could not withhold deliveries in March until deliveries for February had been paid for; and this we hold irrespective of the fact that defendant had been for a long time largely in default on its deliveries. The terms of the contract and the default in deliveries by the defendant, justified the plaintiff in withholding the payment due March 20th in the manner in which it did.

The first ground is equally untenable; the parties had not by mutual consent abrogated the contract. The findings of the trial court in paragraphs 18 and 20, that the plaintiff had repudiated the contract, and the conclusion that the plaintiff and defendant had treated the contract as abrogated before and during the month of March, are each conclusions which are unsupported by the subordinate facts of the finding. We have examined closely the evidence which the parties have filed under plaintiff's motion to correct, together with the evidence recited in the finding, and we find no support whatever for these conclusions. The letters and telegrams between the parties make it entirely clear that both parties treated the contract during the entire month of March as an existing agreement. These also show that there was no attempt at an express rescission, and to us they make it equally clear that there was no evidence of an implied rescission; and this is plainly shown by the communication between these parties as late as March 27th and March 28th. On the 27th, the defendant offered to deliver 1,000 tons of coal at Port Richmond, and the same day plaintiff accepted the offer. On the next day, defendant by telegram expressed its willingness to make this delivery provided plaintiff should make payments, which were past due. On the same day plaintiff wrote defendant in response to this telegram, saying that on delivery of the 1,000 tons of coal it would .pay the

amount due March 20th, and, if necessary, deposit this
amount in a Philadelphia bank under escrow instruc-
tions to pay defendant upon completion of delivery of
the 1,000 tons; and this offer defendant declined on the
same day. It thus appears that both parties under-
stood and intended the contract to be existent and
operative. The real difficulty was that the defendant
was endeavoring to force payments other than as
provided by the contract. The findings in paragraphs
19 and 20 indicate that the trial court was of the opinion
that the plaintiff, while in default in fulfillment of its
part of the contract, was attempting to obtain from
defendant a new agreement as to deliveries after March
1st. We find nothing in the evidence to justify this
conclusion. It is apparent that the plaintiff was sorely
in need of coal. On January 9th, when defendant was
short in its deliveries over 4,000 tons and, so far as the
record shows, plaintiff was not in default in its pay-
ments, plaintiff offered to release defendant from its
obligation as to these deliveries, provided defendant
would deliver of this kind of coal 2,000 tons for each of
the months of January, February and March, instead
of approximately 2,500 tons as called for by the con-
tract. The difference between the contract and market
price for the coal which defendant was obligated to
deliver, and from which obligation plaintiff offered to
release defendant, was a very considerable sum. The
new and different agreement which plaintiff endeavored
to make was obviously for the large pecuniary benefit
of defendant and was made as the result of the plain-
tiff's urgent need of coal.

The only other suggestion upon the record of a new
agreement proposed by the plaintiff, was its offer to
deposit in escrow in a bank moneys to meet payments
upon defendant's completing the delivery promised.
In view of the fact that defendant had offered to

deliver 1,000 tons of coal and, after its offer had been accepted, had insisted, as a condition precedent to delivery, that all back payments be first made, plaintiff's offer to deposit the funds for payment in escrow, to meet delivery of the coal, must be deemed to be a reasonable business protection. And in view of defendant's declination of so reasonable a proposition, it would not have been unfair for the trial court to infer that defendant's real purpose was to secure the back payments without making the promised delivery. In considering the motion to correct, we have taken the evidence certified, together with the evidence found in paragraphs 5 to 17 of the finding. The recital in a finding of the communications between the parties, violates our rule that the finding should state facts not evidence. Doubtless the trial court followed the draft-finding of the plaintiff in this irregular course. Had the case stood exclusively upon the evidence recited in the finding, we do not see how the plaintiff could have had its appeal determined in this court.

In view of the conclusions reached, we omit consideration of plaintiff's claim that, by reason of defendant's prior material default, plaintiff became entitled to damages for breach of the entire contract, including the March deliveries, and was under no obligation to perform further itself.

There is error, the case is remanded with instruction to find the damage due plaintiff for defendant's default in the delivery under the contract for March, 1917, in accordance with this opinion, and to add this sum to the amount of the judgment rendered November 2d, 1920, for $6,615.72, with interest thereon, and to render judgment for such combined sum in favor of plaintiff.

In this opinion the other judges concurred.