**LAREDO HIDES COMPANY, INC.,**
**Appellant,**

v.

**H & H MEAT PRODUCTS COMPANY,**
**INC., Appellee.**

**No. 837.**

Court of Civil Appeals of Texas,
Corpus Christi.

May 31, 1974.

Rehearing Denied Aug. 29, 1974.

Second Motion for Rehearing Denied
Sept. 23, 1974.

Jim Denison, Jack Skaggs, Paul Lee Wiley, Stiernberg, Skaggs & Koppel, Harlingen, for appellant.

M. V. Vela, Vela & Vela, Harlingen, Luther H. Soules, III, Oppenheimer, Rosenberg, Kelleher, & Wheatley, San Antonio, for appellee.

## OPINION

BISSETT, Justice.

This is a breach of contract case. Laredo Hides Company, Inc., the buyer, sued H & H Meat Products Company, Inc., the seller, to recover damages for breach of a

written contract for the sale of cattle hides. Trial was to the court without a jury. A take nothing judgment in favor of defendant was rendered. Plaintiff has appealed.

The controlling facts of the case are undisputed. H & H Meat Products Company, Inc. (H & H) is a meat processing and packing corporation, located in Mercedes, Texas. It sells cattle hides as a by-product of its business. Laredo Hides Company, Inc. (Laredo Hides) is a corporation, located in Laredo, Texas. It purchases cattle hides from various meat packers in the United States and ships them to tanneries in Mexico.

A written contract dated February 29, 1972, was executed whereby Laredo Hides agreed to by H & H's entire cattle hide production during the period March through December, 1972. Among other provisions, the contract provided:

> "Terms: Cash upon delivery—deliveries to be made at least twice a month."

The agreement was signed on behalf of Laredo Hides by Camilio Prada (Prada), its president, and on behalf of H & H by Liborio Hinojosa (Hinojosa), its vice president and general manager.

On March 3, 1972, the first delivery of hides was made under the contract. On that occasion, as had been the practice regarding deliveries under prior contracts between the parties, the hides were picked up at H & H's plant in Mercedes by a truck which was owned by Lozano Transfer Company, whose office is located in Laredo. The trucking company was Laredo Hides' agent for payment and receipt of deliveries of hides from H & H. At the time of delivery of the hides on that day, the truck driver delivered a Laredo Hides check to H & H in payment for the shipment. The check was accepted by H & H, the hides were loaded, and the truck returned to Laredo.

On Friday, March 17, 1972, Laredo Hides, having been notified that the next load of hides was ready for delivery, issued its check for $9,000.00, payable to the order of H & H, and delivered the same to Lozano Transfer Company so that the truck driver could take it with him and give it to H & H the next day, when he picked up the hides. On Saturday morning, March 18th, Esteban Lozano (Lozano), the owner of Lozano Transfer Company, upon arrival at the office, discovered that the truck driver (who had already left for H & H's plant) had forgotten the check. Lozano then telephoned H & H, talked to Hinojosa, and told him what had happened. Lozano asked Hinojosa: "What do you want me to do?" Hinojosa answered: "Don't worry about it; just mail it." According to Hinojosa, that was the extent of their conversation. Lozano, however, testified that during the conversation he told Hinojosa that he could send the check that day (March 18, 1972) to Mercedes because "one of my boys was going to Brownsville", but that Hinojosa advised him that such was not necessary and "told me to send it by mail".

Lozano further testified that on the day in question, March 18, 1972, at about 10:00 A.M., which was after he had talked with Hinojosa, he gave the order to mail the check to H & H. Heriberto Oribe, Lozano's clerk, testified that the envelope to H & H was given to him mid-morning on March 18th and that he deposited it in a mailbox in the vicinity of the post office, Laredo, that morning.

The driver of the truck, shortly after arriving at H & H's plant in Mercedes, told Hinojosa that he did not have the check. Hinojosa told him that he had talked with Lozano and that he (the driver) should "load up". The truck was, accordingly, loaded with the hides, and was driven back to Laredo, where its cargo was delivered to Laredo Hides.

There were no communications between anyone representing Laredo Hides and anyone representing H & H on either Sunday, March 19th or Monday, March 20th.

On Tuesday morning, March 21st, the check had not been placed in H & H's post office box in Mercedes. Hinojosa then telephoned Prada at Laredo. The time of this telephone call is disputed. Hinojosa testified that he placed the call between 10:30 and 11:30 in the morning. Prada testified that he received the call after 1:00 p. m. Hinojosa told Prada that the check had not arrived at the post office in Mercedes. Prada told Hinojosa that the check had been mailed. Hinojosa replied:

" . . . I don't believe you. I am going to give you one chance—get me the money by four-thirty, in my possession, or I won't sell you another hide".

That was the extent of that conversation.

Miss Christina Valdez, Prada's secretary and office manager of Laredo Hides, telephoned Hinojosa on Tuesday, March 21st. Hinojosa, summed up the gist of this conversation in the following words:

"She kept telling me the check had been sent, and it was in the post office, and I said: 'look, I don't believe you, and I don't want to talk to you. But one thing, if you don't have my money to me by four-thirty, I won't sell you another hide'. She said: 'if you don't sell the hides to us, I am going to sue you'. And I said: 'Well, get at it'. And that was the end of it".

Hinojosa further admitted that Miss Valdez telephoned him twice more on that Tuesday afternoon and that Prada telephoned him once more, but he refused to talk to either of them.

The ultimatum delivered by Hinojosa on Tuesday, March 21st touched off a flurry of activity in Laredo. Prada went to a bank in Laredo and between the hours of 2:00 p. m. and 3:00 p. m., arranged to transfer $9,000.00 directly to H & H's account in the Mid-Valley State Bank in Weslaco. After the transfer was arranged, two telegrams were sent to Hinojosa, one by the Laredo Bank, the other by Laredo Hides. Both informed him of the transfer of the funds and that payment on the check had been stopped. These telegrams were received by Hinojosa about 5:00 p. m., March 21st.

A. R. Vela, a vice-president of the Laredo Bank, testified that the transfer had to be arranged through correspondent banks in San Antonio. He telephoned Edward W. Rutledge of the National Bank of Commerce in San Antonio between 3:00 and 4:00 p. m. on March 21st. The National Bank of Commerce was not a correspondent bank of Mid-Valley State Bank. Upon receiving the call from Vela, Rutledge telephone Don Gentry, a vice president of the Mid-Valley State Bank, and asked for instructions. This call was made before 4:00 p. m. on March 21st. Gentry advised Rutledge that the Frost National Bank of San Antonio was their correspondent bank and the money should be paid to that bank for the account of Mid-Valley State Bank. This had to be done by a federal reserve draft, and as the National Bank of Commerce, the Frost National Bank and the Federal Reserve Bank each closed at 3:00 p. m., the actual transfer of the money could not be accomplished until the next day. Accordingly, on March 22nd, the $9,000.00 was paid by federal reserve draft to the Frost National Bank for the account of the Mid-Valley State Bank.

The check was received through the mail by H & H on the morning of Wednesday, March 22nd. Hinojosa then telephoned the Mid-Valley State Bank, inquired about the bank transfer, and was told that such a credit for the account of H & H had not arrived at the bank. He called the bank again Wednesday afternoon and was again advised that the credit had not arrived.

On Thursday morning, March 23rd, a bookkeeper at the Mid-Valley State Bank called Hinojosa and told him that the credit had arrived. The next day, Friday, March 24th, Hinojosa mailed the $9,000.00 check back to Laredo Hides, and refunded $1,237.02 to Laredo Hides, since the

$9,000.00 received by H & H by way of bank transfer amounted to more than the amount of money due on the hides that were delivered on March 18th.

Hinojosa treated the failure to make payment before 4:30 p. m. on March 21, 1972, as a breach of the agreement which gave H & H a right to cancel the contract. On March 30, 1972, Prada called Hinojosa and asked if a shipment of hides would be ready on the following Saturday, April 1, 1972. Hinojosa unequivocally told him that he was not going to sell him anymore hides, and further advised that it was useless for him to send a truck for the hides, since at 4:30 p. m., Tuesday, March 21st, he had made up his mind to terminate the contract.

Laredo Hides, on March 3, 1972, had contracted with a Mexican tannery for the sale of all the hides which it expected to purchase from H & H under the February 29, 1972, contract. Following the cancellation by H & H of the contract, Laredo Hides, in order to meet the requirements of its contract with the tannery, was forced to purchase hides on the open market in substitution for the hides which were to have been delivered to it under the contract with H & H.

H & H's total production during the months April through December, 1972, was 17,218 hides. Under the contract with H & H, the price was $9.75 per hide for bull, steer and heifer hides, and $9.75 per hide for cow hides if the shipment was under 5% cow hides. In the event the shipment was more than 5% cow hides, the price on the excess of cow hides over 5% was reduced to $7.50 per cow hide. The market price for hides steadily increased following the execution of the contract in question. By December 31, 1972, the average cost of bull hides was about $33.00 each and the average cost of cow, heifer and steer hides was about $22.00 each. The total additional cost to Laredo Hides of purchasing substitute hides from other suppliers was $142,254.48. The additional costs (trans-portation and handling charges) to Laredo Hides which resulted because of the purchases from third parties amounted to $3,448.95.

The trial court filed findings of fact and conclusions of law. The findings are, in substance, as follows: 1) time was of the essence of the written contract; 2) on March 18, 1972, plaintiff breached the contract by failure to make payment upon delivery of the hides; 3) defendant (after March 18, 1972) orally agreed with plaintiff to accept payment if the money was in defendant's possession by 4:30 p. m. on March 21, 1972, but if plaintiff did not make such payment within the time limited therefor, that no further hides would be sold to plaintiff under the contract; and, 4) payment was not received until the inter-bank transfer deposit on March 23, 1972. Based on these findings, the court concluded: ". . . that the cancellation by defendant of its contract with plaintiff, upon plaintiff's original breach of such contract and subsequent failure to make such payment to defendant within the time as extended, was legally justified, and that plaintiff is not entitled to recover of defendant its money damages thereafter allegedly accruing."

 Ordinarily, time is not of the essence of a contract, and failure to perform on the exact date agreed upon is not such a breach that justifies a cancellation. Caprito v. Grisham-Hunter Corporation, et al., 128 S.W.2d 149 (Tex.Civ.App.—Eastland 1939, writ dism'd judg. corr.); Chapman v. Levy & Levy, 193 S.W. 1101 (Tex.Civ. App.—Dallas 1917, n. w. h.); 13 Tex.Jur. 2d, Contracts, § 288; 17A C.J.S. Contracts § 504(1). In order to make time of the essence of a contract, it must so provide by express stipulation, or there must be something in the nature of the subject matter, or connected with the purpose, of the contract and the circumstances surrounding it which makes it apparent that the parties intended that the contract be performed at or within the time specified. Langley v.

Norris, 167 S.W.2d 603 (Tex.Civ.App.—Eastland 1942), affirmed in 141 Tex. 405, 173 S.W.2d 454 (1943); McKnight v. Renfro, 371 S.W.2d 740 (Tex.Civ.App.—Dallas 1963, writ ref'd, n. r. e.). Any intention to make time of the essence in the performance of a contract must be clearly manifested from a consideration of the contract as a whole, and when that intention is not made clear by the language in the contract itself, the surrounding circumstances may be taken into consideration in determining that question. Williams v. Shamrock Oil & Gas Co., 128 Tex. 146, 95 S.W.2d 1292 (1936); Foster v. L. M. S. Development Co., 346 S.W.2d 387 (Tex.Civ.App.—Dallas 1961, writ ref'd n. r. e.); English v. Underwood, 5 S.W.2d 1033 (Tex.Civ.App.—El Paso 1928, writ dism'd); Bush v. W. M. Johnson Gin Co., 138 S.W.2d 157 (Tex. Civ.App.—Amarillo 1940, n. w. h.); Investors' Utility Corporation v. Challacombe, 39 S.W.2d 175 (Tex.Civ.App.—Waco 1931, n. w. h.); Nations v. Williams, 203 S.W. 1176 (Tex.Civ.App.—San Antonio 1918, n. w. h.).

■ In 17A C.J.S. Contracts § 504(1), at page 794, the statement is made:

"As a general rule, a stipulation for the payment of money at a particular time will not be regarded as an essential part of the agreement, in the sense that a breach thereof wholly destroys the contract, where the default admits of compensation; . . ."

In essence, the same rule is noted in 67 Am.Jur.2d, Sales, § 403, at page 562, as follows:

". . . time of payment was not of the essence of a contract for sale of goods on a specified day where there was nothing to show that the seller would suffer any loss, injury, or inconvenience by the delay which occurred, or that the goods had depreciated in value. . . ."

It is stated in 17 Am.Jur.2d, Contracts, § 333, at page 772:

". . . Ordinarily, the mere designation of a particular date upon which a thing is to be done does not make that date the essence of the contract . . ."

Those rules, so announced, apply to the case at bar. See Sanborn v. Murphy, 86 Tex. 437, 25 S.W. 610 (1894); Bigham & McCall v. Carr, 21 Tex. 142 (1858).

■ The rule is well established that in an installment contract for the sale of goods, a stipulation of time of payment, in the absence of an express or necessarily implied condition thereto that time of payment upon delivery will be of the essence, is not so vital that a delay in payment would justify the seller's refusal to deliver the succeeding shipments of the goods, unless the delay was of such importance as to cause material injury to the seller, or fairly express the buyer's intention to no longer be bound by the remaining executory agreement. Latham v. Butler, 17 S.W.2d 1083 (Tex.Civ.App.—Galveston 1929, writ ref'd); Grove v. Keeling, 176 S.W. 822 (Tex.Civ.App.—Fort Worth 1915, writ ref'd); Vulcan Trading Corporation v. Kokomo Steel & W. Co., 268 F. 913 (7th Cir. 1920); Plotnick v. Pennsylvania Smelting & Refining Co., 194 F.2d 859 (3rd Cir. 1952); Grand Forks Lumber Co. v. McClure Logging Co., 103 Minn. 471, 115 N.W. 406; Welsh v. Michigan Maple Co., 161 Mich. 16, 125 N.W. 692 (1907); St. Regis Paper Co. v. Santa Clara Lumber Co., 186 N.Y. 89, 78 N.E. 701 (1906); Helgar Corp. v. Warner's Features, Inc., 222 N.Y. 449, 119 N.E. 113 (1918).

■ Provisions in a contract which specify or limit the time of performance, even where time is of the essence of the contract, may be waived. Puckett v. Hoover, 146 Tex. 1, 202 S.W.2d 209 (1947). Further, such a waiver may be express or implied. Kennedy v. McMullen, 39 S.W.2d 168 (Tex.Civ.App.—Beaumont 1931, writ ref'd); 13 Tex.Jur.2d, Contracts, §§ 294–295, pp. 538–541. An extension of time for

payment constitutes an express waiver of the right to declare a forfeiture for failure to make payment at the time prescribed in the contract. Young v. Tian, 150 S.W.2d 317 (Tex.Civ.App.—Galveston 1941, writ dism'd); Shields v. Dunlap, 174 S.W.2d 642 (Tex.Civ.App.—Eastland 1943, n. w. h.).

■ A waiver of the time of performance of a contract will result from any act that induces the opposite party to believe that exact performance within the time designated in the contract will not be insisted upon. T. G. Shaw Oil Corporation v. Parker, 61 S.W.2d 587 (Tex.Civ.App.—Forth Worth 1933, n. w. h.); Bastrop & Austin Bayou Rice Growers' Ass'n v. Cochran, 138 S.W. 1188 (Tex.Civ.App.—Galveston 1911, n. w. h.).

■ It is settled law in this State that where the creditor expressly directs that the money owed him be mailed to him, payment of such debt is made when a letter containing the agreed remittance for the proper amount, properly addressed and with postage prepaid, is deposited in the mail. This rule was succinctly stated in Fant v. Miller, 218 S.W.2d 901 (Tex.Civ. App.—Texarkana 1949, writ ref'd) as follows:

". . . In such a case, the posting of a letter inclosing the remittance as directed constitutes payment, although the letter is lost, and a delay of the remittance in the mail will not result in a forfeiture or loss of the rights through non-payment."

This Court followed the above announced rule in Parkview General Hospital, Inc. v. Ashmore, 462 S.W.2d 360 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd, n. r. e.). See also Colonial Life and Accident Insurance Company v. Wilson, 246 F.2d 922 (5th Cir. 1957).

The parties had done business with each other since the middle 1960's. Prior to 1967, they did business under oral agreements, but in that year they reduced their agreements to writing. Several of those written contracts were introduced in evidence. All of the prior written agreements, as well as the contract dated February 29, 1972, upon which this suit is predicated, provided in identical language that payment for the hides shall be "cash upon delivery". Payment was always by personal check and H & H never insisted upon being paid in "cash". In the instant case, payment by check was fully authorized.

There is no stipulation in the contract sued upon that time is of the essence with respect to payment for the hides at time of delivery. There is no provision therein for a forfeiture or cancellation by H & H in the event payment is not made upon delivery. The contract, when examined in its entirety, furnishes no clue that actual payment for the hides upon delivery was an essential condition of its performance. The language of the contract does not manifest an intention that the parties desired time of payment to be vital, or that a late payment would be a ground for cancellation. There is no showing that H & H would suffer any loss, injury, or even inconvenience by the delay in payment which resulted from the truck driver's forgetfulness. There is nothing in the nature or subject matter of the contract that suggests that time is or should be of the essence. There is no indication whatever that Laredo Hides, on March 18, 1972, or at any time thereafter, intended to abandon the contract.

■ The contract sued on is unambiguous, and parol evidence is not admissible to explain, vary, modify or change its terms. Even if we consider the oral evidence concerning the circumstances surrounding the execution of the contract, that evidence does not relate to late payment as being a ground for termination of the contract. The only evidence (which was admitted over Laredo Hides' objection) with respect to any right to forfeit the contract stems from portions of Hinojosa's testimony. He testified that on sev-

eral occasions prior to February 29, 1972, Laredo Hides had given H & H checks that were turned down by the bank because of "insufficient funds". All of such checks were made good. In connection with that subject, which was a circumstance surrounding the execution of the contract, Hinojosa said:

> "I told him (Prada) it was up to him to make sure I didn't get an insufficient check, because the day I got an insufficient check, that day it (the contract) would be terminated."

He admitted that after that statement was made, the parties entered into the subject contract. There is no evidence that the check which was mailed to H & H would have been dishonored upon presentation to the bank because of "insufficient funds". The oral statement relating to "an insufficient check" does not form any basis that will support a finding that time was of the essence because of the circumstances surrounding the contract.

An examination of Hinojosa's testimony clearly reveals that he did not consider that actual payment for the hides at the time of delivery was of the essence of the agreement. He did not believe that he had a right to terminate the contract on March 18, 1972, when he was advised that the truck driver had forgotten to bring the check with him. The fact that he granted permission for payment after the hides were delivered conclusively shows that time of payment was not of the essence of the contract. The only reason for the unilateral termination of the contract is the failure of Laredo Hides to actually put H & H in possession of the money for the March 18th shipment by 4:30 p.m., March 21, 1972. Such is clearly established by the answers of Hinojosa to the following questions:

> "Q. Well, you didn't believe Cristina Tuesday afternoon when she said it was in the mail. Suppose there had been some way to prove to you then that it was in the mail, and it

was delivered the next day, that would have made everything okay, wouldn't it?

A No. Tuesday morning when I called Prada, I forgot everything that I had told Lozano and everybody, and I said, Prada, get my money to me by four-thirty, or I will never sell you another hide.

Q You said you forgot what you told Lozano — you didn't remember it?

A I didn't care what I said before.

Q You didn't care what you told Lozano, you wanted a new deal?

A I suppose, exactly."

The envelope which is evidence, shows that it was mailed "airmail, special delivery". The postmark which was stamped thereon at Laredo is illegible with regard to any date.

The record before us will neither allow time to be made the essence of the contract by implication, nor permit an oral extrinsic showing that such was the intention of the parties to the written contract, the terms of which are expressed in clear, explicit and unequivocal language. Time of payment was not of the essence under the contract sued on by Laredo Hides.

There are two reasons why the finding that Laredo Hides breached the contract on March 18, 1972, when it failed to make payment upon delivery of the hides cannot be sustained. First, payment was made on March 18, 1972, when the check was mailed to H & H pursuant to instructions by Hinojosa. Second, the actual payment of cash upon delivery of the hides was waived.

■ Payment by mail was expressly authorized by Hinojosa. The evidence conclusively shows that the envelope containing the check was properly addressed to H & H, had affixed thereto the correct amount of postage, was deposited in a

mailbox at or near the post office in Laredo at about 10:00 a.m. on March 18, 1972, and was received by H & H in the mail on the morning of March 22, 1972. There is nothing in the record that required Laredo Hides to actually mail the check on Saturday, March 18, 1972. Hinojosa did not specify any time when the check was to be mailed. A reasonable time was all that was required. Even if the check had not been mailed until March 20, 1972, as H & H argues was the case, this would have been a reasonable time under the circumstances. The delay, if any, did not give H & H a right to terminate the contract because of late payment.

■■■■ Even if it be assumed that Laredo Hides breached the contract because the check was not actually delivered to H &.H until the morning of March 22, 1972, H & H was not justified in cancelling the contract. It is well settled that where one party to a contract leads the other to reasonably believe that strict compliance with the contract is not required, the contract cannot be cancelled for late performance without first notifying the other party that strict compliance with its terms will be insisted upon in the future, and the giving of a reasonable time within which to cure the late performance. Specifically, it has been held that where a creditor had allowed late payments in the past, he could not summarily and unilaterally forfeit the contract without giving the debtor notice of his intention to require strict compliance with the times for payment, and a reasonable time within which to make payments which were in default at the time of giving the notice. Hoover v. General Crude Oil Co., 147 Tex. 89, 212 S.W.2d 140 (1948); A. L. Carter Lumber Co. v. Saide, 140 Tex. 523, 168 S. W.2d 629 (1943); Lynch Davidson & Co. v. Hudson, 15 S.W.2d 203 (Tex.Civ.App. —Texarkana 1929, writ ref'd); Waller v. Nethery, 188 S.W.2d 736 (Tex.Civ.App. —Dallas 1945, writ ref'd w. o. m.); Hill v. James, 7 S.W.2d 910 (Tex.Civ.App.—Eastland 1928, n. w. h.).

In view of the telephone conversation between Lozano and Hinojosa on March 18, 1972, Laredo Hides could reasonably believe that it had done all that H & H required in order to comply with the payment provision of the contract. The sudden unilateral demand that was made by H & H on Tuesday, March 21st, allowed Laredo Hides only a few hours to obtain $9,000.00 and to deliver the same to H & H in Mercedes, a town about 165 miles from Laredo. The demand for receipt of payment did not allow Laredo Hides a reasonable time within which to place H & H in receipt of the money within the time limited therefor. For that reason, if for no other, H & H was not legally justified in cancelling the contract simply because it did not actually receive the money by 4:30 p.m. on that fateful Tuesday. Furthermore, there was no new consideration moving from H & H that supported the demand. Stone v. Morrison & Powers, 298 S.W. 538 (Tex.Comm'n.App., 1927, opinion approved); Signs v. Bankers Life & Casualty Co., 340 S.W.2d 67, 73 (Tex.Civ.App. —Dallas 1960, n. w. h.); 13 Tex.Jur.2d, Contracts, § 269.

■■■■ An anticipatory breach of the entire contract exists if one party thereto, either before the time for performance, or after partial but before full performance, in positive and unconditional terms, refuses to perform further thereunder. Western Oil Sales Corporation v. Bliss & Wetherbee, 299 S.W. 637 (Tex.Comm'n.App., 1927); Troy Const. Co. v. North Carolina Nat. Gas Corp., 316 S.W.2d 957 (Tex.Civ. App.—Waco, 1958, writ ref'd, n. r. e.). Where one of the parties repudiates the contract and absolutely refuses to perform the duties and obligations required of him, the other party need not go through the useless act of tendering performance. Texas Business and Commerce Code, § 2.610, V.T.C.A.; The Maccabees v. Marshall, 11 S.W.2d 523 (Tex.Civ.App.— Austin 1928), aff'd 27 S.W.2d 535 (1930); Young v. Watson, 140 S.W. 840 (Tex. Civ.App.—Galveston 1911, writ ref'd). Un-

der the record before us, H & H repudiated the contract wtih Laredo Hides on March 30, 1972. That repudiation relieved Laredo Hides of itself tendering performance during the remaining months covered by the contract. It would have been useless and futile for Laredo Hides to have made such a tender twice in each of the months remaining.

Since this case must be reversed, we now confront the issue of damages. The guidelines for determining a buyer's remedies in a case where there is a breach of a contract for the sale of goods by a seller are found in Chapter 2 of the Texas Business and Commerce Code.[1] Among other remedies afforded by the Code, when there is a repudiation of the contract by the seller or a failure to make delivery of the goods under contract, the buyer may cover under § 2.711. He may have damages under § 2.-712 "by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller", and "may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages" provided by the chapter; or, he may, under § 2.713, have damages measured by "the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages" provided by the chapter.

█ Laredo Hides instituted suit in May, 1972, and filed its amended petition (its trial pleading) on October 24, 1972, when performance was still due by H & H under the contract. It prayed for specific performance, or in the alternative ". . . damages at least in the amount of one hundred thousand dollars ($100,000), the same being the damages proximately caused by defendant's breach of the contract . . . " There was never a trial amendment of this petition. There were no exceptions by H & H to Laredo Hides' pleadings. Trial commenced on February 28, 1973 was recessed on March 2, 1973, resumed on May 15, 1973, and ended May 16, 1973. Judgment was signed and rendered on August 6, 1973.

Laredo Hides offered uncontroverted evidence of the hide production of H & H from April to December, 1972. It also established the price for the same number of hides which it was forced to buy elsewhere. There was testimony that purchases had to be made periodically throughout 1972 since Laredo Hides had no storage facilities, and the hides would decompose if allowed to age. Furthermore, White, a C. P.A., testified as to statistical summaries which he made showing the cost of buying substitute hides. These summaries were made from invoices which are also in evidence. All of this evidence was admitted without objection. Clearly, Laredo Hides elected to pursue the remedy provided by § 2.712 of the Code, and by its pleadings and evidence brought itself within the purview of the "cover" provisions contained therein.

It is not necessary under § 2.712 that the buyer establish market price. Duesenberg and King, Sales and Bulk Transfers under the U.C.C. § 14.04 Matthew Bender (1974). Where the buyer complies with the requirements of § 2.712, his purchase is presumed proper and the burden of proof is on the seller to show that "cover" was not properly obtained. Spies, Sales, Performance and Remedies, 44 Tex.L.Rev. 629, 638 (1966). There was no evidence offered by H & H to negate this presumption or to "establish expenses saved in consequence of the seller's breach", as permitted by § 2.712.

The difference between the cover price and the contract price is shown to be $134,252.82 for steer hides and $8,001.66 for bull hides, or a total of $142,254.48. In addition, Laredo Hides offered evidence of

---

1. Tex.Bus. & Commerce Code Ann., §§ 2.711, 2.712, 2.713, 2.715.

increased transportation costs of $1,435.77, and increased handling charges of $2,013.-18. These are clearly recoverable as incidental damages where the buyer elects to "cover". §§ 2.715(a); 2.712(b).

Laredo Hides, in addition to its prayer for $100,000.00, as damages, also prayed "for costs of suit and any and all other relief, both at law and in equity, to which plaintiff may be entitled". As already noted, H & H did not except to Laredo Hides' petition. We hold that the petition, in the absence of any special exception, will support recovery to the full extent that the undisputed facts warrant. Rules 90, 91, Texas Rules of Civil Procedure; Humble Oil & Refining Co. v. State, 162 S.W.2d 119, 137 (Tex.Civ.App.—Austin 1942, writ ref'd).

The rule in Texas is that prejudgment interest will be allowed as damages when the principal damages are determinable and established at a definite time, either by rules of evidence or known standards of value. When such is the case, interest is recoverable from the date of the injury. Texas Power & Light Co. v. Doering Hotel Co., 147 S.W.2d 897, 906 (Tex.Civ.App.—Austin 1941), affirmed 139 Tex. 351, 162 S.W.2d 938 (1942); Reed v. Fulton, 384 S.W.2d 173, 179 (Tex.Civ.App. —Corpus Christi, 1964 writ ref'd n. r. e.); Hexter v. Powell, 475 S.W.2d 857, 864 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.). Such interest (as damages) may only be recovered where there is either a specific claim for the interest, or a prayer for general relief and a claim for damages in such a sum as to include interest as well as specific damages. San Antonio & A. P. Ry. Co. v. Collins, 61 S.W.2d 84, 90 (Tex. Comm'n.App.1933); City of Houston v. Anchor-Hocking Glass Corp., 467 S.W.2d 677, 680 (Tex.Civ.App.—Houston 1st Dist. 1971, writ ref'd n. r. e.); Pereira v. Gulf Electric Company, 343 S.W.2d 334, 336 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.); 17 Tex.Jur.2d, Damages, § 200.

In the absence of a special exception, the general rule allows a recovery of interest as damages under a prayer for general relief without the necessity of a specific prayer therefor, provided that the amount claimed in the pleadings is sufficient to cover the loss at the time of accrual of the cause of action and interest thereon from that date to time of trial. Humble Oil & Refining Co. v. State, supra. John F. Buckner & Sons v. Arkansas Fuel Oil Corp., 319 S.W.2d 204 (Tex.Civ. App.—Waco 1958, writ ref'd n. r. e.); Lone Star Gas Company v. Mitchell, 407 S.W.2d 543 (Tex.Civ.App.—Tyler 1966, n. w. h.). In the case before us, there is a prayer for general relief and the claim for damages is open-ended, and as such, is sufficient to include the interest antecedent to judgment in addition to the amount of specific damages claimed. Prejudgment interest in this case may be recovered.

There is no evidence that Laredo Hides, in any manner, endeavored to increase its damages sustained when H & H refused to deliver any more hides to it. Laredo Hides, in purchasing the hides in substitution of the hides which should have been delivered under the contract, acted promptly and in a reasonable manner. The facts of this case regarding the issue of liability of H & H and the issues pertaining to damages suffered by Laredo Hides, have been fully and completely developed in the court below. The facts upon which judgment should have been rendered for Laredo Hides by the trial court are conclusively established. It, therefore, becomes the duty of this Court to render judgment which the trial court should have rendered. Rule 434, T.R.C.P.; Sutton v. Reagan & Gee, 405 S.W.2d 828, 838 (Tex.Civ.App.— San Antonio 1966, writ ref'd, n. r. e.); Parkerson v. American Hospital & Life Insurance Co., 322 S.W.2d 27 (Tex.Civ. App.—Texarkana 1959, writ dism'd).

Interest at the rate of 6% per annum can be precisely determined on the exact difference between the contract price and

the purchase price of the substitute hides for each of the months involved. That interest amounts to $7,132.51. Laredo Hides, in its brief, seeks interest on incidental damages only from December 31, 1972, when the contract terminated of its own terms. That interest amounts to $124.10.

Applying the rules announced by the above cited cases and authorities to the instant case, we hold that the record does not support the findings of fact made by the trial judge and there is no legal justification for the conclusion of law reached by the court. Accordingly, the judgment of the trial court is reversed, and judgment is here rendered for Laredo Hides in the amount of $152,960.04, together with interest thereon at the rate of 6% per annum from August 6, 1973, the date judgment was rendered by the trial court, until paid.

Reversed and rendered.

NYE, Chief Justice (dissenting).

I concur in and with that part of the opinion that calls for a reversal of the trial court's judgment. Since all of the essential facts upon which judgment can be rendered were not conclusively established, nor were they a part of the trial court's finding of fact, the judgment should not be rendered. I would remand the case for a new trial.

### OPINION ON MOTION FOR REHEARING

BISSETT, Justice.

H & H, in its motion for rehearing (which is supported by a detailed brief), contends that we erred in reversing and rendering the judgment of the trial court because there was some evidence to support the express findings of the trial court, and we failed to presume certain implied findings in support of the judgment. Its position is that we must presume the following implied findings: 1) that the contract was part written and part oral; 2) that the intention of the parties to make time of the essence is clearly manifested in the contract as a whole; 3) that H & H agreed to accept payment only if payment was mailed on March 18th; 4) that the extensions of time by H & H for payment by mail on March 18th and in hand on March 21st constituted a modification of the contract; 5) that the envelope which carried the check was mailed and postmarked at Laredo on March 20th, not on March 18th; and, 6) that the contracting parties orally agreed "that payment must be made at delivery and unless so made H & H would terminate the contract".

The essence of a contract is an agreement. W. E. Grace Manufacturing Company v. Levin, 506 S.W.2d 580, 584 (Tex.Sup.1974). The essence of the contract in this case is an agreement that H & H sell its entire production of cattle hides to Laredo Hides at a fixed price for a stated period of time and that Laredo Hides buy all such production for cash.

The failure to make payments at the time provided in a contract does not constitute a breach of contract that will warrant its cancellation unless it is established by the contract or by surrounding circumstances that the parties intended time to be of the essence. As has been stated in the majority opinion, the contract itself did not provide that time is of the essence. On each occasion where Hinojosa testified concerning the circumstances surrounding the contract and its execution, it is apparent that he was concerned only with the problems which he attributed to Christina Valdez and with "hot" checks. There is nothing about those circumstances that remotely indicates that the parties intended that payment at the time of each delivery was of the essence of the entire contract, so that failure to pay at time of delivery for a single shipment of hides would be a ground for terminating the contract with respect to future deliveries thereunder. Under the circumstances presented by this appeal, the question of

whether time of payment as to each delivery is of the essence of the entire contract becomes a question of law and is to be determined by the court. Texas Associates v. Joe Bland Const. Co., 222 S.W.2d 413, 418 (Tex.Civ.App.—Austin 1949, writ ref'd n. r. e.); Herber v. Sanders, 336 S.W.2d 783 (Tex.Civ.App.—Amarillo 1960, n. w. h.).

As the manifested intent of the parties as established by the contract itself or by the circumstances surrounding its execution can make time of the essence, the acceptance of late performance may indicate that the parties did not intend that time be of the essence. Superior Signs, Inc. v. American Sign Services, Inc., 507 S.W.2d 912 (Tex.Civ.App.—Dallas 1974, n. w. h.). Since the facts are undisputed that Laredo Hides did pay for the March 18th delivery of hides, and that H & H made delivery after first being notified that payment would not be made at the time of delivery and then accepted late payment, we remain convinced that time of payment was not intended by the contracting parties to be of the essence, and that the failure of Laredo Hides to make payment on delivery, under the circumstances, did not constitute an actionable breach of contract.

■ H & H had the right to cancel the contract as regards future installment deliveries thereunder only if Laredo Hides breached "the whole contract". Tex.Bus. & Comm.Code, Ann., § 2.612, § 2.703. "If only the seller's security in regard to future installments is impaired, he has the right to demand adequate assurances of proper performance but has not an immediate right to cancel the entire contract". Comment 6 to § 2.612 of the Code. A "cash on delivery" term in an installment contract for the sale of goods makes payment a requisite before delivery of that installment is required, but the provision, of itself, will not have the legal effect of making time of payment essential to the whole contract. There is no showing in this case that the failure to pay on delivery

of a single installment impaired the entire contract with respect to the remaining eighteen installment deliveries due to be performed.

There is no basis for an implied finding that the contract sued on is "part written and part oral" or that the contract as a whole manifested an intention of the parties to make time (of payment) of the essence. The contract was wholly in writing, as expressly found by the trial court.

There is no evidence in the record from which it can be implied that H & H agreed to accept payment for the March 18th delivery of hides only if the check was mailed on March 18th. The testimony of Hinojosa clearly shows that he instructed Lozano to mail the check, nothing more.

Likewise, there is no basis for an implied finding that the check was not mailed until March 20th. The witness Oribe identified the envelope, which contained the check when it was finally delivered to H & H, as being the same envelope which he mailed on March 18th. Carlos Palacios, the postmaster at Laredo, when shown the identical envelope, testified that he could not determine the date that it was postmarked in Laredo. We have carefully examined the original envelope and we cannot decipher the date of the Laredo postmark thereon. The assertion that it can be implied that the envelope was not mailed until March 20th cannot be sustained. The undisputed testimony of Oribe and Lozano conclusively shows that the check was mailed on March 18th.

H & H, in its motion for rehearing, contends that the contract was modified by an oral agreement reached in the telephone conversation of March 21st. There is no pleading that the contract was ever modified. There is no evidence of any oral agreement on March 21st, or on any other day, between the contracting parties that modified the contract.

H & H argues that there are three reasons why it was legally justified in cancel-

ling the contract. First, the failure to pay for the hides when they were delivered on March 18th; second, failure to pay by mail on March 18; and, third, failure to pay in hand by 4:30 p. m. on March 21st. None of the reasons are valid.

First, when the truck arrived at H & H's packing plant on March 18th without the check, H & H could have refused to deliver any hides under the explicit terms of the contract. However, it did not do so; instead, it delivered the hides with full knowledge that payment would not be made at that time. By doing so, H & H waived its right to demand payment at the time of delivery. Massachusetts Bond & Ins. Co. v. Orkin Exterm. Co., 416 S.W.2d 396, 401 (Tex.Sup.1967).

 The question of waiver in this case was conclusively established. It is not a matter of inference. It was not a fact issue to be resolved by the trier of fact. Ford v. Culbertson, 158 Tex. 124, 308 S. W.2d 855, 865 (1958). H & H knowingly dispensed with the performance of something which it had a right to exact. The undisputed instruction of Hinojosa coupled with this action in making delivery left nothing to be inferred relating to waiver of the "cash on delivery" provision. Therefore, even if we were to hold that payment at the time of delivery was of the essence of the entire contract, in this case it was waived as a matter of law. Shaw Equipment Co. v. Hoople Jordan Construction Co., 428 S.W.2d 835, 840 (Tex.Civ. App.—Dallas 1968, n. w. h.); Miller v. Deahl, 239 S.W. 679, 686 (Tex.Civ.App.— Amarillo 1922, writ ref'd, overruled in part 464 S.W.2d 353, 358); 13 Tex.Jur.2d, Contracts, § 294; 60 Tex.Jur.2d, Waiver, § 14.

Second, payment was made on March 18th. The check was mailed on that day. H & H authorized the mailing and, therefore, bore the risk of delay in delivery. Moreover, there is nothing in Hinojosa's testimony that even suggests that he directed Lozano to mail the check on March 18th. Whether the check was mailed on Saturday, March 18th or on Monday, March 21st, is in reality, immaterial. Where no time is specified, all that is required is that performance be accomplished within a reasonable time. Mailing of the check on March 20th would have been within a reasonable time after the telephone conversation of March 18th was concluded. It is undisputed that the check was mailed. Where the fact of mailing is undisputed, what is a reasonable time therefor becomes a question of law. Krueger v. Young, 406 S.W.2d 751 (Tex.Civ.App.— Eastland 1966, n. w. h.). The second reason is not sufficient to warrant a termination of the contract.

Finally, the failure to deliver payment by 4:30 p. m. on March 21st was not a failure to meet a condition in the contract. The demand made on Laredo Hides was outside of the contract. It was unreasonable. It was not supported by consideration. H & H was not obligated to do anything more after this demand was made than before, was still obligated to accept the payment which was already in the mails, and was still obligated under the contract to continue deliveries of hides. H & H cannot unilaterally change fixed contractual rights and obligations in the middle of performance of the contract. Failure to meet the 4:30 deadline did not justify cancellation of the contract.

H & H's contention that Laredo Hides "purchased substitute hides from another supplier in Laredo, Texas at $10.00" cannot be sustained. The page cited in the statement of facts by H & H as authority for that contention clearly shows that those hides were sold to Laredo Hides under a written contract which was already in effect when the contract sued on in this case was made. The hides so purchased were not "substitute" hides. Laredo Hides adequately proved its damages. The testimony which appears at other pages in the statement of facts, referred to by H & H in support of its assertion that Laredo Hides did not adequately prove its dam-

**226**

ages, does not dispute the evidence introduced by Laredo Hides with reference to its damages.

We have considered each of the 129 points presented in the motion for rehearing. None have any merit.

The motion for rehearing is overruled.

NYE, Chief Justice (dissenting).

I respectfully dissent. The original Dissenting Opinion is withdrawn and the following Opinion is substituted therefor.

Plaintiff, Laredo Hides Company, Inc. sued H & H Meat Products Company, Inc. for damages based on a contract. H & H defended contending that Laredo Hides had breached the contract and was not entitled to any damages. The case was tried before the court without the intervention of a jury. The court agreed that the contract had been breached and entered a take-nothing judgment.

Findings of fact and conclusions of law were filed by the trial court. This being a non jury case, the trial court is the judge of the credibility of the witnesses and the weight to be given to their testimony. Where there is probative evidence to support the findings and judgment of the trial court, they are controlling on us, even though some of the evidence is conflicting and the appellate court might have reached a different conclusion. In determining whether the trial court's findings are sufficient and are supported by any evidence of probative value, the appellate court will give credence only to that evidence favorable to the findings and will disregard all evidence to the contrary. Kolbo v. Blair, 397 S.W.2d 125 (Tex.Civ.App.—Corpus Christi 1964 n.r.e.).

H & H processes cattle and sells hides as a by-product. Laredo Hides purchases hides from H & H among others. A written contract was executed whereby Laredo Hides agreed to buy all of H & H's hide production for the period from March through December of 1972. Prior to the contract in question, H & H had considerable difficulty in collecting moneys from Laredo Hides. By contract agreement specifying cash, but by actual practice, Laredo Hides would give its check to H & H at the time it picked up the hides. Lozano's Transfer Company acted as agent for Laredo Hides for delivery of the check and for the purpose of picking up the hides from H & H for delivery to Laredo Hides.

On Saturday (March 18, 1972), the day in question, Lozano, the owner of the transfer company, discovered that his truck driver had left to pick up the hides from H & H and had forgotten the check, Lozano called H & H and talked to Hinojosa explaining to him what had happened. Hinojosa instructed Lozano to put the check in the mail. When the driver arrived at H & H's plant, he told Hinojosa that he did not have the check. Hinojosa told him that he had talked to Lozano and that it was all right to load the truck.

There was much testimony concerning the mailing of the check. However, the check was not received on Monday or on Tuesday morning (March 21, 1972). Hinojosa then called Prada, the owner of Laredo Hides, sometime between 10:30 and 11:30 a.m. Tuesday morning. Hinojosa was upset. He told Laredo Hides' owner, Prada, that the check had not arrived. Prada told Hinojosa of H & H, that the check had been mailed. Hinojosa replied ". . . I don't believe you. I am going to give you a chance. Get me the money by 4:30 p.m., in my possession, or I will not sell you another hide." This was the extent of Tuesday's conversation. Following this conversation, Prada of Laredo Hides went immediately to the bank in Laredo, Texas. He arranged to transfer Nine Thousand Dollars ($9,000.00) (the amount of the check) directly to H & H's account in the Mid-Valley State Bank in Weslaco and stopped payment on the check that had been mailed. Following this, Prada then caused two telegrams to be sent to Hinojosa, one from the bank telling Hino-

josa what had been done by the bank and the other confirming the oral modification of the contract. The second telegram reads as follows:

"H & H MEAT PRODUCTS CO INC. PO BOX 358 TEL 565-3177 MERCEDES TEX 78570

AS PER OUR TELEPHONE CONVERSATION OF TODAY, WE HAVE CANCELLED PAYMENT ON CHECK NUMBER 4021 WHICH WAS ORIGINALLY DELLIVERED BY US TO LOZANO TRANFER ON MARCH 17, 1972 AND WHICH ACCORDING TO YOU HAS NOT BEEN RECEIVED TO DATE. THE LAREDO NATIONAL BANK HAS TODAY EXTENDED CREDIT TO YOUR ACCOUNT AT THE MID-VALLEY STATE BANK IN WESLACO, TEXAS IN THE AMOUNT OF $9.000.00 (NINE THOUSAND DOLLARS 00/100) IN FULL SATISFACTION OF OUR OBLIGATION FOR THE SHIPMENT OF HIDES DELIVERED ON MARCH 18, 1972 TO LOZANO TRANSFER

LAREDO HIDES CORP"

The transfer of funds was not received by H & H on Tuesday by 4:30 p.m. Hinojosa treated the failure to make payment (by 4:30 p.m. on Tuesday, March 21, 1972), as a breach of the agreement between H & H and Laredo Hides.

The plaintiff Laredo Hides in its appeal contends that the trial court erred in holding that Laredo Hides had breached the contract. The majority agrees reversing and rendering judgment for $152,960.04 against H & H.

The majority opinion holds that there was evidence that the original contract was modified by H & H and by Laredo Hides' agent (Lozano Transfer Company) permitting Laredo Hides' check to be mailed to H & H in satisfaction of the obligation. The majority refuses to recognize further

modification of the contract by H & H's demand and Laredo Hides' acceptance that the money for the hides be received by H & H by 4:30 p.m. on Tuesday.

Chapter 2 of V.T.C.A. Business and Commerce Code is applicable to this case. Section 2.102 applies to transactions in goods. What is included within the meaning of "transactions in goods" is described in section 2.105 defining what is covered by the meaning of the term "goods" and section 2.106(a) defines contract, agreement and contract for sale. Because the transactions in the case at bar fall within the above sections, Chapter 2 and its subsections must be considered in determining and adjudicating the rights, duties and obligations of the parties.

Section 2.209(a) of Chapter 2 provides that an agreement modifying a contract within this chapter *needs no consideration to be binding*. Such agreement is binding between the parties (2.209(a) ) if the requirements of the statute of frauds section of Chapter 2 (section 2.201) are satisfied 2.209(c). Section 2.201 designates the formal requirements which must be met in order to satisfy the statute of frauds. The facts and circumstances of the case at bar show that these requirements have been met (2.201(b) ). The parties were merchants (2.204(a); 2.204(c) ) and a writing in confirmation of their oral modification was present and received by H & H.

The modifying agreement entered into by Laredo Hides was shown in two instances. First, it occurred after H & H proposed the new terms as to time of payment (4:30 p.m. Tuesday). Laredo Hides pursued a course of conduct that could only be viewed as agreeing to the new terms. Laredo Hides went to its bank and attempted to transfer cash to H & H's account. It caused to be sent, two telegrams representing that funds had been transferred to H & H's account. It stated that payment on the check that had been mailed to H & H had been stopped. The language in the telegram expressly shows that

Laredo Hides acquiesced in the new terms of payment as modified. Laredo Hides' intention being that the payment terms in the original contract, that was modified by the agreement to allow Lozano Transfer Company to mail the check to H & H, was no longer controlling.

Laredo Hides breached the first modification of the contract when they stopped payment on the check. There was no way for H & H to be paid except by the subsequent new modification. This act alone would prevent the trial court's judgment from being reversed and rendered. But when Laredo Hides tried to perform by transferring funds to H & H's account, but failed, this breach requires an affirmance of the trial court's judgment. The trial court's specific findings of fact, supported by ample evidence, necessitates this holding. The court found:

"I find as a fact that defendant thereafter orally by telephone agreed with plaintiff to accept payment for such hides if said payment were in defendant's possession by 4:30 o'clock PM on March 21, 1972, but further in such telephone conversation with plaintiff's agent advised that if such payment were not in defendant's possession by said time, that defendant would sell no further hides to plaintiff under said contract."

The majority opinion assumed that H & H had the right to cancel the contract only if Laredo Hides had breached the "whole contract". This assumes that the contract was an installment contract covered under Article 2, Section 2.612 of the Bus. & Com. Code, and even if Laredo Hides had breached its contract, it did not substantially impair the value of the whole contract so as to give H & H the right to terminate the contract as a whole. I disagree with this holding for two (2) reasons. First, a fact question is raised as to whether or not the failure to pay as agreed on a single installment impaired the entire contract with respect to the remaining installments agreed to be performed. The evidence showed that H & H had received many checks from Laredo Hides which were found to be returned for insufficient funds. This was the reason that the written contract provided "cash on delivery". These insufficient fund checks created problems as to H & H paying its suppliers and prevented H & H from meeting other obligations incurred in its business. These facts were sufficient to support the trial court's implied findings that H & H had a right to terminate the whole contract. See Commentary in White & Summers U.C.C. at page 259. The Court of Civil Appeals must uphold the trial court's judgment if the implied findings are supported by the evidence. Rosales v. Rosales, 377 S.W.2d 661 (Tex.Civ.App.—Corpus Christi 1964, no writ).

Second, Section 2.612, U.C.C. defines an installment contract as one which requires or authorizes the delivery of goods in separate lots to be separately accepted. This language contemplates a contract for the purchase of a specified quantity of goods which will be delivered in specified quantities at specified time intervals. The subject contract between H & H and Laredo Hides provided for all of H & H Meat Products Company's production. Such term is so indefinite as to preclude the contract from being an installment contract. Such a contract can only be viewed as an output contract. Any breach of an output type contract would give H & H the right to cancel the contract irregardless of whether it goes to the "whole contract" or not. The provisions of Section 2.612, U.C.C. are not applicable.

Because Chapter 2 of the Business and Commerce Code is applicable throughout, the parties had the right to orally modify the written contract. Such oral modification satisfied the statute of frauds. It therefore became binding between the two parties. Laredo Hides having failed to perform in accordance with the contract as modified breached the contract giving H & H the right to terminate the contract. I would hold that the evidence and the trial

court's findings support the judgment. Appellee's motion for rehearing should be granted and the judgment of the trial court should be affirmed.

PAUL W. NYE, Chief Justice (dissenting).

I respectfully dissent. I would grant the motion for rehearing and affirm the judgment of the trial court.